No. 05-743 T
(Judge Francis M. Allegra)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ELWOOD J. LEBLANC, JR. and JANICE L. LEBLANC,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

UNITED STATES' MOTION TO DISMISS THE COMPLAINT
AND BRIEF IN SUPPORT

RICHARD T. MORRISON
Acting Assistant Attorney General

DAVID GUSTAFSON
STEVEN I. FRAHM
KAREN SERVIDEA
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 616-3423
(202) 514-9440 (Fax)

## TABLE OF CONTENTS

**Page**

Motion of the United States to Dismiss the Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Brief for the United States in Support of Its Motion to Dismiss the Complaint . . . . . . . . . . . . . . 3

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Questions Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Authorities Involved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Statement of Facts:

I. The 1986 Tax Year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
II. The 1999 Tax Year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Argument:

I. This Court Lacks Jurisdiction to Consider Plaintiffs' Claimed Loss, as It Would Require Partnership-Level Determinations – Whether Partnership Transactions Were Entered into for Profit and Were Not Shams – That May Be Made Only in a Partnership-Level Proceeding . . . . 10

A. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

B. Plaintiffs' Claimed Loss Depends on Whether the Partnership's Transactions Were Entered into for Profit and Were Not Shams . . . . . . 11

C. Whether the Partnership's Transactions were Engaged in for Profit, or Were Shams, Are Partnership-Level Inquiries . . . . . . . . . . . . . 14

D. TEFRA Was Enacted to Provide a Unified Procedure under which Partnership Items Are Determined at the Partnership Level . . . . . . . . . . 16

E. The Determination of Whether Partnership Transactions Were Entered into for Profit and Were Not Shams Constitutes the Determination of a "Partnership Item" . . . . . . . . . . . . . . 17

**Page**

F. As a Partnership Item, the Determination of Whether Partnership Transactions Were Entered into for Profit and Were Not Shams Cannot Be Made in this Partner-Level Refund Suit . . . . . . . . . . . . . . . . 18

II. The Disallowance of Plaintiffs' Deduction for ACVA's Reported Loss Did Not Increase their Overall Basis in their Partnership Interest . . . . . . . 21

A. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

B. The Law Provides Adjustments to the Basis of a Partnership Interest to Avoid the Duplication or Negation of Partnership-Level Determinations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

C. The Settlement Agreement Did Not Increase the Overall Basis of Plaintiffs' Partnership Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Appendix A:

Internal Revenue Code of 1986 (26 U.S.C.):

§ 165 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1
§ 705 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1
§ 722 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-2
§ 752 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-2
§ 6221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-2
§ 6222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-2
§ 6226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-2
§ 6230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-3
§ 6231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-4
§ 7422 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-5

Treasury Regulations (26 C.F.R.):

§ 1.705-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-6
§ 301.6231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-6

**Page**

Appendix B: (Separately Bound):

Declaration of Karen Servidea . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B-1

Exhibit 1: U.S. Partnership Return of Income of Agri-Cal Venture Associates for the taxable year ending November 30, 1986 . . . . . . . . . B-3

Exhibit 2: Plaintiffs' 1986 U.S. Individual Income Tax Return . . . . . . . . . . . . . . . B-14

Exhibit 3: Plaintiffs' Form K-1, Partner's Share of Income, Credits, Deductions, etc. for the November 30, 1986, taxable year of Agri-Cal Venture Associates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B-22

Exhibit 4: IRS transcript for plaintiffs' 1986 taxable year . . . . . . . . . . . . . . . . . . B-26

Exhibit 5: Notice of Final Partnership Administrative Adjustment for the November 30, 1986, taxable year of Agri-Cal Venture Associates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B-29

Exhibit 6: Petition to the United States Tax Court in the case of *Agri-Cal Venture Associates v. Commissioner of Internal Revenue*, Docket No. 12530-90 . . . . . . . . . . . . . . . . . . . . . . B-35

Exhibit 7: Letter dated May 5, 2000, from plaintiffs' counsel to the IRS, enclosing a partial settlement offer (Form 870-P(AD)) signed by plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B-49

Exhibit 8: Partial settlement agreement (Form 870-P(AD)) signed by plaintiffs and the IRS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B-53

Exhibit 9: Notice of computational adjustment (Form 4549) for plaintiffs' 1986 taxable year, sent from the IRS to plaintiffs, dated March 5, 2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B-55

Exhibit 10: Notice of assessment for plaintiffs' 1986 taxable year, from the IRS to plaintiffs, dated March 26, 2001 . . . . . . . . . . . . . . . . . . . . . . B-63

Exhibit 11: Decision of the United States Tax Court in the case of *Agri-Cal Venture Associates v. Commissioner of Internal Revenue*, Docket No. 12530-90 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B-67

**Page**

Exhibit 12: Certified Record of Assessments, Payments, and Other Specified Matters for plaintiffs' 1999 taxable year . . . . . . . . . . . . . . . B-70

Exhibit 13: Letter dated May 24, 2002, from plaintiffs' counsel to the IRS, enclosing a refund claim for plaintiffs' 1999 taxable year . . . . . . . . . B-74

Exhibit 14: Letter dated July 10, 2003, from the IRS to plaintiffs, disallowing their 1999 refund claim . . . . . . . . . . . . . . . . . . . . . . . . . B-84

**CITATIONS**

**Cases:**

*Allen v. Commissioner of Internal Revenue*, 1988 WL 34867, 55 T.C.M. (CCH) 641 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Brown v. United States*, 396 F.2d 459 (Ct. Cl. 1968) . . . . . . . . . . . . . . . . . . . . . . . . 12-14

*Cannon v. Commissioner of Internal Revenue*, 949 F.2d 345 (10th Cir. 1991) . . . . . . . 14

*Cherin (Ralph) v. Commissioner of Internal Revenue*, 89 T.C. 986 (1987) . . . . . . . . . . 14

*Coltec Industries v. United States*, 454 F.3d 1340 (Fed. Cir. 2006), *cert. denied*, 127 S. Ct. 1261 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Crnkovich v. United States*, 202 F.3d 1325 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . 17

*Cross v. Commissioner of Internal Revenue*, 64 T.C.M. (CCH) 1532, 1992 WL 370604 (Dec. 17, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cullin v. Commissioner of Internal Revenue*, 63 T.C.M. (CCH) 1997, 1992 WL 16298 (Feb. 4, 1992), *aff'd*, 980 F.2d 729 (6th Cir. 1992) . . . . . . . . . . . . . . 12

*Evans v. Commissioner of Internal Revenue*, 908 F.2d 369 (8th Cir. 1990) . . . . . . . . . 14

*Farmer v. Commissioner of Internal Revenue*, 68 T.C.M. (CCH) 178 1994 WL 386167 (July 25, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

**Page**

**Cases (continued):**

*Fickling v. United States*, ___ F.3d ___ 2007 WL. 3378379 . . . . . . . . . . . . . . . . . . . . . 22

*Foys v. Commissioner of Internal Revenue*, 63 T.C.M. (CCH) 2028, 1992 WL 20287 (Feb. 10, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Frank Lyon Co. v. United States*, 435 U.S. 561 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hattersley v. Commissioner of Internal Revenue*, 63 T.C.M. (CCH) 1946, 1992 WL 12286 (Jan. 29, 1992), *aff'd*, 983 F.2d 1066 (6th Cir. 1992) . . . . . . . . 12

*Hauser v. Commissioner of Internal Revenue*, 64 T.C.M. (CCH) 1226, 1992 WL 315446 (Nov. 3, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hawley v. Commissioner of Internal Revenue*, 55 T.C.M. (CCH) 217, 1988 WL 12766 (Feb. 24, 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hildebrand v. Commissioner of Internal Revenue*, 28 F.3d 1024 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hill v. Commissioner of Internal Revenue*, 204 F.3d 1214 (9th Cir. 2000) . . . . . . . . . . . 14

*Illes v. Commissioner of Internal Revenue*, 982 F.2d 163 (6th Cir. 1992) . . . . . . . . 12, 13

*Keener v. United States*, 76 Fed. Cl. 455 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*Knetsch v. United States*, 348 F.2d 932 (Ct. Cl. 1965) . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Marinovich v. Commissioner of Internal Revenue*, 77 T.C.M. (CCH) 2075 1999 WL 339316 (May 28, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Menardi v. Commissioner of Internal Revenue*, 63 T.C.M. (CCH) 1954, 1992 WL 13956 (Jan. 30, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Nault v. United States*, No. 04-cv-479-PB, 2007 WL. 465310 (D.N.H. Feb. 9, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

**Page**

**Cases (continued):**

*Olson v. United States*, 172 F.3d 1311 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Omerza v. Commissioner of Internal Revenue*, 63 T.C.M. (CCH) 2690, 1992 WL 67401 (Apr. 6 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Parson v. Commissioner of Internal Revenue*, 63 T.C.M. (CCH) 1992, 1992 WL 16296 (Feb. 4, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Pasternak v. Commissioner of Internal Revenue*, 990 F.2d 893 (6th Cir. 1993) . . . . 14, 15

*RJT Investments X v. Commissioner of Internal Revenue*, 491 F.3d 732 (8th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*River City Ranches #1 Ltd. v. Commissioner of Internal Revenue*, 401 F.3d 1136 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ryall v. Commissioner of Internal Revenue*, 63 T.C.M. (CCH) 2139, 1992 WL 27442 (Feb. 19, 1992), *aff'd*, 999 F.2d 540 (6th Cir. 1993) . . . . . . . . . . . . . 12

*Sharbek v. Commissioner of Internal Revenue*, 63 T.C.M. (CCH) 2051, 1992 WL 21696 (Feb. 11, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Simon v. Commissioner of Internal Revenue*, 830 F.2d 499 (3d Cir. 1987) . . . . . . . . . . 15

*Tallal v. Commissioner of Internal Revenue*, 778 F.2d 275 (5th Cir. 1985) . . . . . . . . . . 15

*Transpac Drilling Venture, 1983-2 v. United States*, 32 Fed. Cl. 810 (1995), *aff'd*, 83 F.3d 1410 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*Transpac Drilling Venture, 1983-63 v. United States*, 16 F.3d 383 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ward v. Commissioner of Internal Revenue*, 64 T.C.M. (CCH) 1222, 1992 WL 315444 (Nov. 3, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Winn-Dixie Stores, Inc. v. Commissioner of Internal Revenue*, 254 F.3d 1313 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wolf v. Commissioner of Internal Revenue*, 4 F.3d 709 (9th Cir. 1993) . . . . . . . . . . . . . 14

**Page**

**Cases (continued):**

*Wright v. Commissioner of Internal Revenue*, 67 T.C.M. (CCH) 3125, 1994 WL 276907 (June 23, 1994) . . . . . . . . . . 11, 14

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 162 . . . . . . . . . . 7
§ 165 . . . . . . . . . . 11, A-1
§ 179 . . . . . . . . . . 25
§ 183 . . . . . . . . . . 17, 18
§ 465 . . . . . . . . . . 26
§ 469 . . . . . . . . . . 26
§ 701 . . . . . . . . . . 16
§ 702 . . . . . . . . . . 16
§ 705 . . . . . . . . . . 22-25, 27, A-1
§ 707 . . . . . . . . . . 25
§ 722 . . . . . . . . . . 23, 26, A-2
§ 742 . . . . . . . . . . 23
§ 752 . . . . . . . . . . A-2
§ 6031 . . . . . . . . . . 16
§ 6211 . . . . . . . . . . 16
§ 6212 . . . . . . . . . . 16
§ 6221 . . . . . . . . . . 16, 20, A-2
§ 6222 . . . . . . . . . . 16, A-2
§ 6223 . . . . . . . . . . 16
§ 6226 . . . . . . . . . . 8, 21, A-2
§ 6227 . . . . . . . . . . 19
§ 6228 . . . . . . . . . . 19
§ 6230 . . . . . . . . . . 16, 18-20, A-3
§ 6231 . . . . . . . . . . 16, 17, A-4
§ 6621 . . . . . . . . . . 9, 15
§ 7422 . . . . . . . . . . 18, 19, A-5

Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324 . . . 7

**Page**

**Miscellaneous:**

H.R. Rep. 83-1337 (1954), *reprinted in* 1954 U.S.C.C.A.N. 4017 . . . . . . . . . . . . . . . . . 24

Rev. Rul. 89-7, 1989-1 C.B. 178 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Rev. Rul. 96-10, 1996-1 C.B. 138 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Rule 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

S. Rep. 83-1622 (1954), *reprinted in* 1954 U.S.C.C.A.N. 4621 . . . . . . . . . . . . . . . . . . . 24

Treas. Reg. (26 C.F.R.):

Treas. Reg. § 1.701-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Treas. Reg. § 1.702-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Treas. Reg. § 1.705-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, A-6
Treas. Reg. § 301.6231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, A-6

Arthur B. Willis, John S. Pennell, & Philip F. Postlewaite, *Partnership Taxation*, ¶ 5.02[4], 5-12 (6th ed. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 26

William S. McKee, William F. Nelson, & Robert L. Whitmire, Federal *Taxation of Partnerships and Partners*, ¶ 6.02[3][c], 6-13 . . . . . . . . . . . . . . . . . . . . . . 24

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-743 T
(Judge Francis M. Allegra)

ELWOOD J. LEBLANC, JR. and JANICE L. LEBLANC,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

MOTION OF THE UNITED STATES TO DISMISS THE COMPLAINT

Defendant, the United States, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), moves to dismiss on the grounds that the Court lacks subject matter jurisdiction over the complaint. In the alternative, the United States moves to dismiss under Rule 12(b)(6) on the grounds that plaintiffs have failed to state a claim upon which relief can be granted.

In support of its motion, defendant relies on the allegations of plaintiffs' complaint, the following brief, and the exhibits contained in Appendix B to the brief.

Respectfully submitted,

s/Karen Servidea
KAREN SERVIDEA
*Attorney of Record*
*U.S. Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 616-3423
(202) 514-9440 (fax)

RICHARD T. MORRISON
*Acting Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/ Steven I. Frahm
Of Counsel

December 7, 2007
Date

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-743 T
(Judge Francis M. Allegra)

ELWOOD J. LEBLANC, JR. and JANICE L. LEBLANC,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

BRIEF FOR THE UNITED STATES IN SUPPORT OF ITS
MOTION TO DISMISS THE COMPLAINT

## INTRODUCTION

This is a suit for a refund of federal income taxes for the taxable year ending December 31, 1999, plus statutory interest. During 1986, plaintiffs held an interest in a partnership. Plaintiffs' basis in their partnership interest was partly attributable to their share of partnership liabilities reported by the partnership in 1986. The partnership reported substantial expense deductions for that year, generating a net loss (*i.e.*, an excess of deductions over income). Plaintiffs claimed their share of the reported net loss as a deduction from their 1986 taxable income.

The Internal Revenue Service ("IRS") subsequently determined that the partnership's activities were shams that lacked economic substance and, accordingly, disallowed almost all of the expense deductions that gave rise to the partnership's net loss. The IRS also found that the

liabilities reported by the partnership and giving rise to part of plaintiffs' basis were not bona fide. The partnership contested the IRS's determinations in the United States Tax Court. During the pendency of the Tax Court proceeding, plaintiffs entered into a partial settlement agreement with the IRS, agreeing to the disallowance of approximately half of the expense deductions originally claimed by the partnership, and, correspondingly, half of the share of that loss that they claimed on their individual return. The remainder of the Tax Court litigation continued. The Tax Court subsequently disallowed approximately half of the claimed expense deductions, based on its finding that the partnership's transactions lacked economic substance, and reduced by approximately 84% the partnership's liabilities, based on its finding that the liabilities lacked economic substance.

Plaintiffs are now claiming in 1999 under a different legal theory substantially the same partnership loss deduction they claimed in 1986, effectively seeking to rescind their agreement with the IRS. Plaintiffs' theory is that, because the basis of a partnership interest is decreased by a partner's share of a partnership's net loss, the settlement agreement under which a portion of the reported loss was disallowed increased the basis of their partnership interest. On that basis, plaintiffs claim the increased basis as a loss deduction in 1999, when they allegedly abandoned their partnership interest.

The Court should dismiss plaintiffs' complaint for two independent reasons. First, a partner is entitled to an abandonment loss deduction for a partnership interest only if the partnership's transactions were engaged in with a profit motive and were not shams. But under TEFRA rules, the purpose and bona fides of the partnership's activities can only be resolved in a proceeding at the partnership level, not the pending individual partner level suit, since the

determination affects the computation of the partnership's taxable income. The Court therefore lacks jurisdiction to grant plaintiffs the recovery they seek.

Second, even if this were the proper forum for plaintiffs' claim, plaintiffs' theory that their overall basis in their partnership interest is increased by the settlement agreement is legally and computationally wrong. Basis is reduced under the applicable statute by either an allowable loss or a nondeductible expenditure. Plaintiffs' reported basis in their partnership interest was reduced by their share of the partnership's reported loss. The settlement agreement then decreased the deductible loss and increased nondeductible expenditures, leaving plaintiffs' basis in their partnership interest unchanged by the loss disallowance. The law simply does not increase a partner's overall basis in a partnership interest when a loss is determined to be nondeductible, as plaintiffs assert. It therefore does not permit the unintuitive, nonsensical result plaintiffs seek under which they could effectively rescind their settlement by deducting as a loss in a later year the same amount they had agreed with the IRS was a nondeductible loss.

QUESTIONS PRESENTED

1. Does this Court have jurisdiction in this partner-level suit to determine a partnership item – the character of partnership transactions – that was at issue in a unified partnership proceeding in the Tax Court to which plaintiffs were parties?

2. Can plaintiffs increase the basis of their partnership interest as a result of the settlement agreement that partially disallowed their claimed loss, and thereby deduct a loss in the disallowed amount in a later year when they allegedly abandoned their partnership interest?

AUTHORITIES INVOLVED

The pertinent portions of the authorities involved are set forth in Appendix A, *infra*.[1]

STATEMENT OF FACTS[2]

I. The 1986 Tax Year

During the period 1986 through 1998, plaintiffs Elwood J. LeBlanc, Jr., and Janice L. LeBlanc ("plaintiffs" or "the LeBlancs") held a limited partnership interest in a partnership known as Agri-Cal Venture Associates ("ACVA" or "the partnership"). Compl. ¶ 6. ACVA reported a net loss of approximately $34 million on its partnership return for the taxable year ending November 30, 1986. Def. Ex. 1, App. B at B-4; *see* Compl. ¶ 10.C. Almost all of the net loss was generated by approximately $32 million of farming expense deductions (*e.g.*, fertilizer, farm rent, seeds, and plants) and approximately $630,000 of miscellaneous expense deductions. Def. Ex. 1, App. B at B-4, B-6, B-10, B-11. Plaintiffs claimed a deduction for their distributable share of the partnership loss ($69,380) on their original 1986 income tax return (Form 1040). Def. Ex. 2, App. B at B-21; Def. Ex. 3, App. B at B-23; Def. Ex. 4, App. B at B-27. The partnership also reported approximately $27.6 million of partnership liabilities for 1986, $41,600 of which was reported to be plaintiffs' share. Def. Ex. 1, App. B at B-5; Def. Ex. 3, App. B. at B-23.

---

[1]Unless otherwise noted, the section symbol ("§") or the word "section" shall refer to the Internal Revenue Code of 1986, codified in Title 26 of the United States Code, as amended and in effect during the relevant period.

[2]The following facts are taken from allegations contained in the complaint, which defendant accepts as true for the purposes of this motion, the IRS's Certificates of Assessments, Payments, and Other Specified Matters, the IRS's administrative files, the public records of the United States Tax Court at Docket Number 12530-90, and documents produced by plaintiffs.

ACVA's November 30, 1986, tax year was subject to the unified partnership procedures enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324 ("TEFRA"). Pursuant to those procedures, on March 14, 1990, the IRS issued ACVA a notice of final partnership adjustment ("FPAA"), disallowing in full all of the claimed farming and miscellaneous expense deductions. Def. Ex. 5, App. B at B-30, B-33. As grounds for the disallowance, the FPAA determined that (1) "[t]he partnership's activities constituted a series of sham transactions lacking economic substance"; (2) "[t]he partnership did not actively engage in the trade or business of farming during the taxable period"; and (3) "[t]]he partnership did not pay or incur any bona fide trade or business expenses during the taxable period, or if the partnership did pay or incur any expenses during the taxable period, it has not been established that they were ordinary and necessary trade or business expenses currently deductible under [§ 162] and the Regulations thereunder." *Id.* at B-34. The FPAA further determined that the liabilities reported by the partnership were not bona fide. *Id.*

On June 13, 1990, a notice partner in ACVA filed a petition in the United States Tax Court to contest the adjustments made in the FPAA. Def. Ex. 6, App. B at B-36. The petition asserted that the IRS erred, *inter alia*, in (1) disallowing the farming and miscellaneous deductions; (2) determining that the partnership's activities constituted a series of sham transactions lacking economic substance; (3) determining that the partnership did not actively engage in the trade or business of farming; (4) determining that the partnership had failed to establish that it paid or incurred bona fide ordinary and necessary trade or business expenses; and (5) determining that the liabilities reported by the partnership were not bona fide. *Id.* at B-39 - B-40.

Since the plaintiffs here were partners in ACVA, section 6226(c) treated them as parties to the Tax Court proceeding. On May 5, 2000, plaintiffs made the IRS an offer in partial settlement of their interest in the Tax Court case by signing and submitting a Form 870-P(AD). Def. Ex. 7, App. B at B-50 - B-52. The IRS accepted the settlement offer by signing the Form 870-P(AD) on June 16, 2000. Def. Ex. 8, App. B at B-54. Under the settlement, the parties stipulated to the disallowance of approximately $17 million, or approximately 52%, of the farming and miscellaneous deductions ACVA originally reported. Def. Ex. 7, App. B at B-52. The disallowed deductions, in turn, decreased the partnership's net loss by slightly more than fifty percent ($17 million divided by $34 million). The partial agreement did not cover all of the adjustments made by the FPAA or contested in the Tax Court proceeding. It left undisturbed the FPAA's findings that ACVA's activities constituted sham transactions, that the partnership did not actively engage in the trade or business of farming, that the partnership did not pay or incur bona fide business expenses, and that the reported partnership liabilities were not bona fide. *See id*. Plaintiffs further agreed in the settlement agreement that "the treatment of partnership items under [the] agreement [would] not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact" and that "no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted." Def. Ex. 8, App. B at B-54.

On March 5, 2001, the IRS sent plaintiffs a notice of computational adjustment, showing how the agreed changes to the partnership items affected plaintiffs' income tax liability for 1986. Def. Ex. 9, App. B at B-56. Consistent with the settlement, the notice reduced by $35,239, or just over 50%, the partnership loss deduction claimed on plaintiffs' original 1986 return. *Id.* at B-58, B-60. The notice calculated interest on the resulting deficiency at the heightened rate

applicable to pre-1989 underpayments attributable to tax-motivated transactions. *Id.* at B-62; *see* § 6621(c) (1988) (repealed 1989). In accordance with the notice, the IRS assessed additional tax in the amount of $14,598 and interest in the amount of $47,368.12 on March 26, 2001. Def. Ex. 10, App. B at B-64. Plaintiffs paid the assessment through a cash bond received by the IRS on June 20, 2000, a credit from the 2000 tax year, and a subsequent payment received by the IRS on April 13, 2001. Def. Ex. 4, App. B at B-27 - B-28.

While plaintiffs were settling with the IRS, the Tax Court proceeding continued. On July 19, 2001, the Tax Court issued a decision upon the IRS's motion for entry of decision. Def. Ex. 11, App. B at B-68. The Tax Court disallowed approximately $16 million or 50% of the farming expense deductions and allowed all of the miscellaneous expense deductions, thereby reducing ACVA's originally reported net loss by approximately 47%. *Id.* The Tax Court held that the adjustments to the partnership's income and expense were "attributable to transactions which lacked economic substance, as described in [the statute that formerly imposed a heightened interest rate on underpayments due to tax-motivated transactions]." *Id.* at B-69. The Tax Court also reduced the liabilities reported by the partnership by $23 million (or 84%) after finding that such "liabilities . . . lack[ed] economic substance." *Id.* at B-68 - B-69.

II. The 1999 Tax Year

Plaintiffs filed a joint individual income tax return for 1999. Def. Ex. 12, App. B at B-72. On their return, plaintiffs claimed a long-term capital loss deduction of $8,380 for their interest in ACVA. *Id.*; Def. Ex. 13, App. B at B-81. Approximately two years later (on May 30, 2002), plaintiffs filed a claim for refund for the 1999 tax year. Def. Ex. 12, App. B at B-72; Def. Ex. 13, App. B at B-76. Plaintiffs' refund claim sought to change the treatment of the loss

deduction claimed on their original return in two ways. First, it increased the amount of the deduction from $8,380 to $34,084. Def. Ex. 13, App. B at B-83. The refund claim did not explain the basis for the increase. Second, plaintiffs recharacterized the loss from a capital loss to an ordinary loss on the basis that the partnership interest had been abandoned, rather than sold. *Id.* at B-77, B-81, B-83. As a result of those changes, plaintiffs claimed a refund in the amount of $8,789. *Id.* at B-76. By letter dated July 10, 2003, the IRS disallowed plaintiffs' refund claim. Def. Ex. 14, App. B at B-85.

Plaintiffs filed the instant suit on July 11, 2005. Like the refund claim, the complaint seeks a refund in the amount of $8,789 for the 1999 tax year. Compl.at 4. The complaint alleges that plaintiffs received a "substantial basis" in their partnership interest in ACVA when they agreed to the partial disallowance of the partnership loss deduction they claimed for the 1986 tax year. *Id.* ¶ 10.D. The complaint further avers that ACVA terminated in 1998. *Id.* ¶ 7. Plaintiffs therefore claim that they are entitled to a loss deduction equal to the amount of their "substantial basis" in 1999. *Id.* ¶ 10.D. They allege that such a deduction would entitle them to a refund in the amount of $8,789.

## ARGUMENT

### I. This Court Lacks Jurisdiction to Consider Plaintiffs' Claimed Loss, as It Would Require Partnership-Level Determinations – Whether Partnership Transactions Were Entered into for Profit and Were Not Shams – That May Be Made Only in a Partnership-Level Proceeding

#### A. Introduction

To be entitled to a loss deduction for an investment in a transaction, a taxpayer must establish that the transaction was entered into for profit and was not a sham – *i.e.*, that it had objective economic substance and a business purpose other than (or in addition to) tax

avoidance. The plaintiffs here did not enter into the transactions they have placed at issue; the transactions were executed by the partnership, ACVA, in which plaintiffs had invested. The nature of those transactions, including whether they were executed with a profit objective and whether they were shams constitutes a partnership item within the TEFRA framework. Because this is a partner-level, and not a partnership-level, proceeding, TEFRA bars this Court from making determinations with respect to the nature of ACVA's transactions. The Court therefore lacks jurisdiction over essential elements of plaintiffs' claim, and the complaint must be dismissed.

### B. Plaintiffs' Claimed Loss Depends on Whether the Partnership's Transactions Were Entered into for Profit and Were Not Shams

There are two requirements to the availability of the deduction plaintiffs are claiming for the loss of their investment in ACVA: (1) the partnership transactions must have been entered into for profit and (2) the partnership transactions must not have been shams. The first requirement comes directly from the statute governing loss deductions. That provision limits an individual's deductions to (1) losses incurred in a trade or business, (2) losses incurred in "any transaction entered into for profit, though not connected with a trade or business," and (3) casualty losses. § 165(c)(2). Since plaintiffs make no claim that ACVA was their trade or business (rather than an investment on their part), or that they suffered a casualty loss, plaintiffs must show that their loss arises from a "transaction entered into for profit."

The second requirement – that the transactions were not shams – comes from case law.[3] Plaintiffs are not the first taxpayers who, after being denied deductions or credits generated directly by a tax shelter, have then attempted to claim a loss on their investment in the shelter. The cases that have considered such claims (and have routinely rejected them) have established the rule that, regardless of the taxpayer's subjective profit motive, a taxpayer is not entitled to a deduction for the loss of an investment if the transaction in which he invested was a sham – *i.e.*, if the transaction lacked economic effects or a substance other than the generation of tax benefits, or if the transaction served no business purpose. In other words, the sham-transaction doctrine, which applies generally to disqualify transactions for tax purposes, applies to claims like plaintiffs'.[4]

---

[3] *Illes v. Comm'r of Internal Revenue*, 982 F.2d 163, 165 (6th Cir. 1992); *Nault v. United States*, No. 04-cv-479-PB, 2007 WL 465310, at *4-*5 (D.N.H. Feb. 9, 2007); *Marinovich v. Comm'r of Internal Revenue*, 77 T.C.M. (CCH) 2075 (1999), 1999 WL 339316, at *2 (May 28, 1999); *Farmer v. Comm'r of Internal Revenue*, 68 T.C.M. (CCH) 178 (1994), 1994 WL 386167, at *3 (July 25, 1994); *Wright v. Comm'r of Internal Revenue*, 67 T.C.M. (CCH) 3125, 1994 WL 276907, at *7 (June 23, 1994); *Cross v. Comm'r of Internal Revenue*, 64 T.C.M. (CCH) 1532, 1992 WL 370604, at *8 (Dec. 17, 1992); *Hauser v. Comm'r of Internal Revenue*, 64 T.C.M. (CCH) 1226, 1992 WL 315446, at *3 (Nov. 3, 1992); *Ward v. Comm'r of Internal Revenue*, 64 T.C.M. (CCH) 1222, 1992 WL 315444, at *3 (Nov. 3, 1992); *Omerza v. Comm'r of Internal Revenue*, 63 T.C.M (CCH) 2690, 1992 WL 67401, at *3-*4 (Apr. 6 1992); *Ryall v. Comm'r of Internal Revenue*, 63 T.C.M. (CCH) 2139, 1992 WL 27442 (Feb. 19, 1992), *aff'd*, 999 F.2d 540 (6th Cir. 1993); *Sharbek v. Comm'r of Internal Revenue*, 63 T.C.M. (CCH) 2051, 1992 WL 21696 (Feb. 11, 1992); *Foys v. Comm'r of Internal Revenue*, 63 T.C.M. (CCH) 2028, 1992 WL 20287 (Feb. 10, 1992); *Cullin v. Comm'r of Internal Revenue*, 63 T.C.M. (CCH) 1997, 1992 WL 16298 (Feb. 4, 1992), *aff'd*, 980 F.2d 729 (6th Cir. 1992); *Parson v. Comm'r of Internal Revenue*, 63 T.C.M. (CCH) 1992, 1992 WL 16296 (Feb. 4, 1992); *Menardi v. Comm'r of Internal Revenue*, 63 T.C.M. (CCH) 1954, 1992 WL 13956 (Jan. 30, 1992); *Hattersley v. Comm'r of Internal Revenue*, 63 T.C.M. (CCH) 1946, 1992 WL 12286 (Jan. 29, 1992), *aff'd*, 983 F.2d 1066 (6th Cir. 1992) (unpublished table decision).

[4] For the definition of a sham transaction, see *Frank Lyon Co. v. United States*, 435 U.S. 561, 573 (1978); *Coltec Indus. v. United States*, 454 F.3d 1340, 1352 (Fed. Cir. 2006), *cert. denied.*, 127 S. Ct. 1261 (2007); and *Winn-Dixie Stores, Inc. v. Comm'r of Internal Revenue*, 254

(continued...)

In *Illes v. Commissioner of Internal Revenue*, 982 F.2d 163 (6th Cir. 1992), for example, the taxpayer originally claimed deductions and credits arising from a series of tax shelter transactions. *Illes*, 982 F.2d at 165. The IRS concluded that the transactions lacked economic substance and disallowed the deductions and credits. *Id.* In the Tax Court, the taxpayer conceded the lack of economic substance and stipulated to the disallowance of the deductions and credits originally claimed, but claimed that he was entitled to a loss deduction for the amount of money he invested in the enterprise. *Id.* He argued that the loss deduction was allowable because, regardless of the nature of the transactions, he acted with a subjective profit motive. *Id.* Rejecting the taxpayer's argument, the Sixth Circuit held that "[i]f [a] transaction lacks economic substance, then the [loss] deduction must be disallowed without regard to the 'niceties' of the taxpayer's intent." *Id.*

The requirement that a taxpayer claiming a loss deduction must demonstrate the objective legitimacy of the transactions in which he invests, rather than his own subjective profit motive, is further evident in two Court of Claims cases decided before most of the development of the modern-day sham-transaction doctrine. *See Brown v. United States*, 396 F.2d 459 (Ct. Cl. 1968); *Knetsch v. United States*, 348 F.2d 932 (Ct. Cl. 1965). In both *Brown* and *Knetsch*, the taxpayers claimed a loss for their out-of-pocket investments in tax shelters after the original deductions generated by the schemes were disallowed. *Brown*, 396 F.2d at 460-61; *Knetsch*, 348 F.2d at 934. In each case, the Court denied the loss after considering the nature of the underlying transactions. In *Knetsch*, for example, the Court held that because the transactions provided the taxpayers with only a limited amount of equity, the claimed loss was not incurred in a

[4](...continued)
F.3d 1313, 1316 (11th Cir. 2001).

"transaction entered into for profit." *Knetsch*, 348 F.2d at 939. As the Court explained, "the objective facts in this case, which can be used as indicators of the taxpayers' profit intention, show that they never intended to realize a profit from the transaction separate and apart from the tax benefits." *Id.* Similarly, in *Brown*, the Court stated that its "evaluation of the legal relationships created by the venture and those objective facts which indicate whether a subjective profit motive existed when the transaction was begun, leads us to conclude that plaintiff did not have any profit motive other than (or in addition to) the tax benefit." *Brown*, 396 F.2d at 466.[5]

C. Whether the Partnership's Transactions were Engaged in for Profit, or Were Shams, Are Partnership-Level Inquiries

The for-profit and sham-transaction inquiries take place at the partnership level and require the Court to analyze the intentions of ACVA's managing partners and the economic substance of ACVA's transactions. First, where taxpayers act through a partnership, profit motive is determined at the partnership level by focusing on the intentions and actions of the partnership's managing partners.[6] As the Fifth Circuit explained, "the partnership's motive

---

[5]While some language in *Brown* (396 F.2d at 466-67) might be read to suggest that an investor's subjective profit motive can compensate for a finding that the underlying transaction was a sham, the Court's ultimate holding, disallowing the claimed deduction, relegates that language to dicta. Moreover, whatever precedential value those statements might have had has not survived the Federal Circuit's recent *Coltec* decision. In *Coltec*, the court held that a transaction that lacks objective economic substance must be disregarded for tax purposes, regardless of the taxpayer's subjective profit motive. *See Coltec Indus.*, 454 F.3d at 1355; *see also Cherin (Ralph) v. Comm'r of Internal Revenue*, 89 T.C. 986, 993 (1987) (holding that the presence of an individual's profit objective cannot supply economic substance to a business transaction).

[6]*See Hill v. Comm'r of Internal Revenue*, 204 F.3d 1214, 1218 (9th Cir. 2000); *Hildebrand v. Comm'r of Internal Revenue*, 28 F.3d 1024, 1027 (10th Cir. 1994); *Wolf v. Comm'r of Internal Revenue*, 4 F.3d 709, 713 (9th Cir. 1993); *Pasternak v. Comm'r of Internal Revenue*, 990 F.2d 893, 901 (6th Cir. 1993); *Cannon v. Comm'r of Internal Revenue*, 949 F.2d 345, 349-50 (10th Cir. 1991); *Evans v. Comm'r of Internal Revenue*, 908 F.2d 369, 373 (8th Cir. 1990); *Simon v. Comm'r of Internal Revenue*, 830 F.2d 499, 507 (3d Cir. 1987); *Tallal v.*

(continued...)

controls, not an individual partner's motive for joining the partnership." *Tallal v. Comm'r of Internal Revenue*, 778 F.2d 275, 276 (5th Cir. 1985).

Further, where taxpayers claim loss deductions arising from activities conducted by a partnership, the transactions relevant to the sham-transaction inquiry are those executed by the partnership. As the Tax Court explained, "for individual taxpayers to be entitled to loss deductions with respect to funds invested in partnerships, the underlying *partnership* transactions must have economic substance." *Marinovich v. Comm'r of Internal Revenue*, 77 T.C.M. (CCH) 2075, 1999 WL 339316, at *2 (May 28, 1999) (emphasis added).[7]

In sum, plaintiffs' claimed loss for their partnership interest in ACVA necessarily involves inquiries regarding whether ACVA's managing partners acted with a profit motive and whether ACVA's transactions were not shams. As explained below, making those partnership-level inquiries would require the determination of a "partnership item" which, under TEFRA's jurisdictional restrictions, is not permitted in this partner-level suit.

---

[6](...continued)
*Comm'r of Internal Revenue*, 778 F.2d 275, 276 (5th Cir. 1985).

[7]*Nault v. United States*, No. 04-cv-479-PB, 2007 WL 465310, at *5 (D.N.H. Feb. 9, 2007); *Farmer v. Comm'r of Internal Revenue*, 68 T.C.M. (CCH) 178 (1994), 1994 WL 386167, at *3 (July 25, 1994); *Wright v. Comm'r of Internal Revenue*, 67 T.C.M. (CCH) 3125, 1994 WL 276907, at *7 (June 23, 1994); *see also Transpac Drilling Venture, 1983-2 v. United States*, 32 Fed. Cl. 810, 820 (1995) (holding that the sham-transaction doctrine applies at the partnership level for the purpose of determining whether partnership expenses are deductible), *aff'd*, 83 F.3d 1410 (Fed. Cir. 1996); *Pasternak v. Comm'r of Internal Revenue*, 990 F.2d 893, 900-01 (6th Cir. 1993) (same), *Hawley v. Comm'r of Internal Revenue*, 55 T.C.M. (CCH) 217, 1988 WL 12766, at *7 (Feb. 24, 1988) (same); *Keener v. United States*, 76 Fed. Cl. 455, 467 (2007) (holding that the sham-transaction doctrine applies at the partnership level for the purpose of determining whether an underpayment is subject to the tax-motivated interest rate under former § 6621(c) (1987) (repealed 1989)).

### D. TEFRA Was Enacted to Provide a Unified Procedure under which Partnership Items Are Determined at the Partnership Level

For federal income tax purposes, a partnership must file an annual information return, but it is not a taxable entity. §§ 701, 6031; Treas. Reg. § 1.701-1. Instead, each partner pays income tax on his distributive share of the partnership's taxable income. The partnership's taxable income depends on items such as the partnership's gross income, deductions, and credits. § 702; *see* Treas. Reg. § 1.702-1. Before 1982, there was no mechanism for making adjustments to the tax treatment of partnership items at the partnership level. Adjustments had to be determined in separate proceedings involving each individual partner. If a partnership had numerous partners located throughout the country, there were often wasteful, duplicative expenditures of administrative and judicial resources, as well as inconsistent results. *See Olson v. United* States, 172 F.3d 1311 (Fed. Cir. 1999); *Transpac Drilling Venture, 1983-63 v. United States*, 16 F.3d 383, 387 (Fed. Cir. 1994).

To eliminate those inefficiencies and inconsistencies, Congress enacted TEFRA, which provides a unified procedure for determining the tax treatment of partnership items. The fundamental rule established by TEFRA is that "the tax treatment of any partnership item . . . shall be determined at the partnership level." § 6221. To implement that rule, each partner, on the partner's individual tax return, must treat partnership items consistently with the treatment of such items on the partnership information return. § 6222(a). TEFRA then provides a series of partnership-level procedures for the IRS, the partnership, or individual partners to adjust the treatment of partnership items, and for the judicial review of any such adjustments. §§ 6223-6230. Conversely, the tax treatment of nonpartnership items is resolved at the individual partner level, using, *inter alia*, the normal deficiency procedures of the Code. §§ 6211, 6212,

6230(a)(2); *see Crnkovich v. United States*, 202 F.3d 1325, 1328-29 (Fed.Cir. 2000) (per curiam).

E. The Determination of Whether Partnership Transactions Were Entered into for Profit and Were Not Shams Constitutes the Determination of a "Partnership Item"

Under TEFRA, the nature of partnership transactions, including whether they were entered into for profit and were not shams, constitutes a partnership item. TEFRA defines the term "partnership item" as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary [of the Treasury] provide that . . . such item is more appropriately determined at the partnership level than at the partner level." § 6231(a)(3). As authorized, the Secretary of the Treasury has provided in regulations that the term "partnership item" includes, *inter alia*, items of gain, loss, deduction, or credit claimed by the partnership and the "legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." *See* Treas. Reg. § 301.6231(a)(3)-1(a), (b). Examples of items falling within the latter category include the determination of whether a partnership's activities were engaged in with the intent to make a profit where § 183 makes such an intent a condition to claiming a deduction.[8] *Id.* § 301.6231(b).

The sham-transaction and for-profit inquiries fall within the definition of "partnership item," because they determine whether the income, credits, gain, loss, and deductions generated by a partnership's transactions will be respected for tax purposes. *See* Treas. Reg. § 301.6231(b). Both inquiries are also closely related to the determination of whether partnership

---

[8]Section 183 provides that "[i]n the case of an activity engaged in by an individual or an S corporation, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as [otherwise provided in § 183]." § 183(a).

activities are engaged in with the intent to make a profit for purposes of allowing deductions under § 183 – a determination that is specifically included within the definition of partnership item. *Id.*[9] Indeed, this Court has previously held that the sham-transaction inquiry is a partnership item (or the partnership prong of an affected item) where relevant to the imposition of tax-motivated interest (*Keener v. United States*, 76 Fed. Cl. at 468-70) and to the disallowance of expense deductions (*Transpac Drilling Venture, 1983-2 v. United States*, 32 Fed. Cl. 810, 820 (1995)). The Ninth Circuit has reached the same conclusion with respect to tax-motivated interest. *River City Ranches #1 Ltd. v. Comm'r of Internal Revenue*, 401 F.3d 1136 (9th Cir. 2005); *see also RJT Investments X v. Comm'r of Internal Revenue*, 491 F.3d 732, 738 (8th Cir. 2007) (holding that the determination of whether a partnership itself is a sham constitutes a partnership item).

F. As a Partnership Item, the Determination of Whether Partnership Transactions Were Entered into for Profit and Were Not Shams Cannot Be Made in this Partner-Level Refund Suit

Section 7422(h) provides that "[n]o action may be brought for a refund attributable to partnership items," unless one of two exceptions applies. Since the determination that ACVA's transactions were entered into with a profit objective and were not shams is the determination of a partnership item, it cannot be made in this partner-level refund suit, unless an exception applies. It must instead be made in a partnership-level proceeding.

As framed, plaintiffs' claim implicates the exception in § 7422(h) for an "erroneous computation," which is defined in § 6230(c). An erroneous computation includes a claim that

[9] *See Keener v. United States,* 76 Fed. Cl. 455, 469 (2007) (reasoning that because the section 183 inquiry is very similar to the sham-transaction analysis that must be conducted in deciding the partnership prong of the affected item associated with tax-motivated interest, the sham-transaction inquiry must be a partnership item).

"the Secretary failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement." § 6230(c)(1)(B). Plaintiffs characterize their claim as one that the Secretary failed to allow a credit or to make a refund to plaintiffs in the amount of an overpayment attributable to the application of their 1986 settlement agreement. Compl. ¶ 10.E.[10]

While Section 6230(c) is an exception to the prohibition of a partner-level refund suit attributable to partnership items, such a suit nevertheless cannot change the treatment of partnership items as determined at the partnership level. TEFRA provides that "[f]or purposes of any claim or suit [arising out of an erroneous computation], the treatment of partnership items on the partnership return, under the settlement, under the final partnership administrative adjustment, or under the decision of the court (whichever is appropriate) shall be conclusive." § 6230(c)(4). The settlement agreement that plaintiffs in this case entered with the IRS echoes that restriction by providing that "no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted." Def. Ex. 8, App. B at B-54. Since the partnership-level record will always contain at least one of the components listed in § 6230(c)(4) (*i.e.*, partnership return, settlement, FPAA, or court decision), a court hearing a partner-level suit will never have jurisdiction to do other than incorporate the partnership-level

[10]Plaintiffs' complaint does not implicate the other exception in § 7422(h), referring to § 6228(b), as plaintiffs do not allege that they filed an "Administrative Adjustment Request" under § 6227.

determination of partnership items into the partner-level suit.[11] It will lack jurisdiction to determine such items for itself. *See also* § 6221.

The Court thus would have jurisdiction to award plaintiffs the relief they seek only if the final partnership-level record (an unadjusted partnership return, a settlement agreement, an uncontested FPAA, or a court decision) contained the determination that ACVA's transactions were entered into for profit and were not shams. § 6230(c)(4); *see also* § 6221. The final partnership-record contains no such determination.

ACVA's original return, in which the partnership treated the transactions as bona fide, was adjusted by an FPAA issued by the IRS. The FPAA determined that ACVA's transactions were shams, lacking in economic substance, and that ACVA did not incur any bona fide trade or business expenses. Plaintiffs' settlement agreement with the IRS did not alter the FPAA's findings with respect to the nature of ACVA's activities. Indeed, the Tax Court ultimately determined that the partnership's transactions lacked economic substance. Thus, there is no finding in the final partnership record that would enable this Court to award plaintiffs the relief they seek. The Court therefore lacks jurisdiction over plaintiffs' complaint.[12]

---

[11]Such a restriction does not render meaningless the right of a partner to bring a suit under the exception for partner-level refund suits. A partner could state a jurisdictionally valid claim, for example, by demonstrating that he paid taxes based on the partnership's originally reported income; that the reported partnership income was subsequently decreased through partnership-level TEFRA proceedings; and that the IRS failed to issue the partner a refund of the overpayment that results from applying the adjustment to the partner's taxable income. In that case, as here, the court in the partner-level refund suit would lack jurisdiction to do other than incorporate the treatment of partnership income as shown in the final partnership-level record. But, by so incorporating the partnership-level record, the court would be able to grant the partner's refund claim.

[12]The United States reserves its right to contend that partnership items not settled in plaintiffs' settlement agreement and resolved in the Tax Court determinations bind plaintiffs and preclude recovery.

Viewed from a broader perspective, plaintiffs' claim also would distort the overall framework established by TEFRA and subvert Congress's purpose for enacting TEFRA. Plaintiffs ask this Court to determine that ACVA's transactions had sufficient economic substance, and that ACVA's managing partners acted with sufficient profit motive, to entitle them to deduct their investment in ACVA. But plaintiffs are just one of a number of taxpayers who invested in ACVA. If those other taxpayers were to bring similar claims, then the same substantive determinations would have to be made in multiple audit and judicial proceedings. Plaintiffs' position thus undermines TEFRA's purpose to eliminate duplicative expenditures of administrative and judicial resources. Moreover, each separate audit and judicial proceeding could resolve the sham-transaction and for-profit inquiries differently, thus subverting TEFRA's goal of treating partners consistently. Plaintiffs had the opportunity to obtain the judicial determination that they now seek – on behalf of all of the partners of ACVA – through a unified partnership proceeding. § 6226(b). Indeed, plaintiffs were party to judicial proceedings instituted for that purpose. § 6226(c). Plaintiffs' choice to partially settle its interest in those proceedings does not allow plaintiffs now to circumvent TEFRA's jurisdictional rules by obtaining in this proceeding what they failed to obtain in the prior partnership-level proceedings.

The Court should therefore dismiss plaintiffs' complaint for lack of subject matter jurisdiction.

## II. The Disallowance of Plaintiffs' Deduction for ACVA's Reported Loss Did Not Increase their Overall Basis in their Partnership Interest

### A. Introduction

Plaintiffs contend that the disallowance of the partnership loss deduction they claimed for 1986 increased ("restored") their basis in their partnership interest. *See* Compl. ¶ 10.D.

Plaintiffs argue that, because § 705(a)(2)(A) reduces basis by a partner's distributive share of a partnership loss, and they therefore reduced the basis in their partnership interest by their distributive share of the originally claimed partnership loss, their overall basis in their partnership interest must have increased when half of the partnership loss deduction they claimed for 1986 was disallowed. On that basis, plaintiffs claim losses in 1999 from the abandonment of their partnership interest that are equivalent to the losses they agreed were not allowable in 1986 – effectively an end run around their settlement agreement. Thus, plaintiffs' theory is to the effect that, even if a partnership loss is not allowable, and partners are not entitled to deduct their distributive share of such a loss, they nevertheless can deduct it later as a loss of their partnership interest.

By focusing on § 705(a)(2)(A) alone, and ignoring other applicable rules regarding the determination of the basis of a partnership interest, plaintiffs reach an incorrect, illogical, and unintuitive result. This Court should reject it. *See Fickling v. United States,* ___ F.3d ___ (11th Cir. 2007), 2007 WL 3378379 (rejecting a taxpayer's claim that a settlement agreement with the IRS left the taxpayer with 30% of his originally claimed basis in certain debentures, because the agreement disallowed 70% of the capital loss the taxpayer originally claimed upon the sale of the debentures).

The law governing the determination of basis in a partnership interest, in its entirety, provides for various adjustments to ensure that the effects of the partnership's taxable events are not duplicated, or, as relevant here – negated – by the pass-through nature of partnership taxation. Indeed, as plaintiffs maintain, § 705(a)(2)(A) provides that basis is reduced by a partner's distributive share of partnership losses. But § 705(a)(2)(B) also provides that basis is reduced by a partner's distributive share of nondeductible expenses. Thus, when plaintiffs

settled with the IRS on the basis that about half of their share of reported losses was nondeductible, while the basis reduction under (a)(2)(A) was diminished, the basis reduction under (a)(2)(B) was increased. Thus, the disallowed loss and the increased nondeductible expenditures resulted in no net change in basis. Contrary to plaintiffs' theory, the disallowance did not increase their overall basis in their partnership interest. Without such an increase, plaintiffs' claim fails, because they have not set forth any other means for computing the basis of their interest in ACVA.

B. The Law Provides Adjustments to the Basis of a Partnership Interest to Avoid the Duplication or Negation of Partnership-Level Determinations

A partner has an initial basis in a partnership interest. *See* §§ 705(a), 722, 742. That basis is then increased by the partner's distributive share of the taxable income of the partnership, and decreased by the partner's distributive share of the losses of the partnership. § 705(a). As explained below, these adjustments ensure that the partner is not taxed more than once on the same economic gain and does not receive more than one deduction for the same economic loss.

To illustrate, suppose, for example, that individuals X, Y, and Z, each contribute $2,000 to form Partnership XYZ at the beginning of year 1, so that each partner starts with a partnership interest with a basis of $2,000, and the partnership starts with $6,000 in holdings. Suppose further that the partnership experiences a net loss of $300 in year 1, so that at the end of the year the partnership has only $5,700 in holdings. Each partner deducts his $100 share of the partnership loss from his taxable income for year 1. If one of the partners then decides to sell his interest in the partnership at the end of year 1, he will receive only $1,900, because of the reduction in the value of the partnership's holdings. If the basis of the partner's interest were not

reduced by the $100 of partnership loss he already deducted, then he would recognize a second $100 loss ($1,900 - $2,000) when he sold his interest and thus receive two deductions for the same economic loss. By the same token, if the basis of a partnership interest were not increased by a partner's share of the partnership's taxable income, then a partner would be taxed more than once on the same economic gain, once when the income was earned by the partnership and again when the partner sold his interest.

The basis of a partnership interest is also increased by the partner's distributive share of income of the partnership exempt from taxation, and is decreased by the partner's distributive share of expenditures of the partnership not deductible in computing its taxable income (and not properly chargeable to capital account). § 705(a).[13] These adjustments ensure that the determination that a partnership's income is tax-exempt, or that a partnership's expenses are not deductible, is not nullified when a partner disposes of his partnership interest.[14]

---

[13]*See also* Treas. Reg. § 1.705-1(a)(2), (3) (2007) (same in 1986) (providing that the basis of a partnership interest shall be increased by, among other things, "[t]ax-exempt receipts of the partnership," and shall be decreased by, among other things, "[p]artnership expenditures which are not deductible in computing partnership taxable income or loss and which are not capital expenditures"); William S. McKee, William F. Nelson, & Robert L. Whitmire, *Federal Taxation of Partnerships and Partners*, ¶ 6.02[3][c], 6-13 (discussing nondeductible expenditures that reduce basis in partnership interests); Arthur B. Willis, John S. Pennell, & Philip F. Postlewaite, *Partnership Taxation*, ¶ 5.02[4], 5-12 (6th ed. 2006).

[14]*See* S. Rep. 83-1622 (1954), *reprinted in* 1954 U.S.C.C.A.N. 4621, 5026 ("The adjustments to the basis of a partner's interest are necessary to prevent unintended benefit or detriment to the partners. Thus, a partner's distributive share of nontaxable income (such as exempt income or depletion allowances in excess of basis) is added to the basis of his interest in the partnership so that the benefit of such tax-exempt income will not be lost to the partner. Otherwise, the partner would eventually incur a capital gain with respect to such amounts. Similarly, the partner's share of nondeductible expenditures must be deducted from his basis in order to prevent such amounts from eventually constituting capital loss to him."); H.R. Rep. 83-1337 (1954), *reprinted in* 1954 U.S.C.C.A.N. 4017, 4365 (same).

Suppose, for example, that Partnership XYZ's loss in the preceding example resulted from a $300 illegal bribe that was not deductible in computing the partnership's taxable income for year 1. If the basis of each partner's interest were not decreased by his share of the expenditure, even though it was not deductible by the partnership, then a partner could sell his interest – now worth only $1,900 – recognize a $100 loss and thereby receive a deduction for the nondeductible illegal bribe. The same would be true if the partnership terminated (without a liquidating distribution) or a partner abandoned his partnership interest. If the basis of a partnership interest were not decreased by the amount of the nondeductible expenditure, then the abandoning partner would receive a $2,000 deduction, $100 of which would be attributable to the illegal bribe. *See* Rev. Rul. 96-10, 1996-1 C.B. 138 (holding that when a partnership sells an asset at a loss (*i.e.*, for an amount less than the partnership's basis in the asset), but is prohibited from deducting the loss because the purchaser owns more than 50% of the interest in the partnership (*see* § 707(b)), the basis of each partnership interest is nonetheless decreased by the amount of the disallowed loss); Rev. Rul. 89-7, 1989-1 C.B. 178 (holding that § 179 expenses that are not deductible in computing a partnership's taxable income constitute nondeductible expenditures and therefore decrease the basis of each partnership interest).

C. The Settlement Agreement Did Not Increase the Overall Basis of Plaintiffs' Partnership Interest

The basis adjustment rules decrease the basis of plaintiffs' partnership interest in ACVA by their share of ACVA's 1986 partnership loss. § 705(a)(2)(A). The rules also decrease the basis of plaintiffs' partnership interest in ACVA by their share of ACVA's expenditures that are "not deductible in computing its taxable income." § 705(a)(2)(B). When plaintiffs entered into the settlement agreement, under which they agreed that approximately half of the loss they had claimed was nondeductible, the disallowed loss was thus converted into nondeductible

expenditures. Since losses reduce basis under (a)(2)(A), and nondeductible expenditures reduce basis under (a)(2)(B), the settlement agreement had the effect of decreasing the amount of basis reduction attributable to losses and increasing the amount of basis reduction attributable to nondeductible expenditures, leaving plaintiffs' overall basis unchanged. There was not, as plaintiffs claim, an increase in basis as a result of the settlement.

This result furthers the purpose of the basis adjustment rules by ensuring that tax determinations at the partnership level are not nullified at the partner level. Not increasing plaintiffs' basis when losses were disallowed prevents plaintiffs from obtaining upon the abandonment of their partnership interest a deduction for the farming and miscellaneous expenditures that were nondeductible when the partnership claimed them as expense deductions.[15]

---

[15]Plaintiffs' basis-restoration theory is also undermined by the basis adjustment rules that require a decrease in basis to account for a partner's share of the partnership's loss, regardless of whether the partner was able to deduct his share of the loss or otherwise received a tax benefit from it. For example, if a partner is barred from deducting his share of partnership loss under the at-risk rules (§ 465) or the passive loss rules (§ 469), the basis of his interest nonetheless decreases by his share of the partnership loss. *See Allen v. Comm'r of Internal Revenue*, 1988 WL 34867, 55 T.C.M. (CCH) 641, 647 & n.26 (1988); *see also* Willis, Pennell, & Postlewaite, *Partnership Taxation*, ¶ 5.02[4], 5-11, n.38 ("The basis of a partnership interest is reduced by the partner's distributive share of the partnership losses even if the partner receives no tax benefit from such losses").

Thus, even if the 1986 settlement agreement were interpreted as a determination that plaintiffs could not deduct their share of the reported partnership loss, the result is the same. Under such a view of the settlement agreement, plaintiffs would nonetheless have been required to decrease the basis of their partnership interest by the full amount of the distributable loss, regardless of whether a portion of the loss was nondeductible and resulted in no tax benefits. Hence, the settlement agreement can not, under any circumstances, increase plaintiffs' basis in their partnership interest.

Thus, the settlement agreement does not entitle plaintiffs to increase the basis of their partnership interest in ACVA.[16] Because plaintiffs have claimed no amount of basis other than what they argue should have been restored because of the settlement agreement, they are not entitled to a refund.

---

[16]Even if the settlement agreement did entitle plaintiffs to increase the basis of their partnership interest by the amount of the disallowed loss, plaintiffs' claim would fail, because it also overlooks a simultaneous decrease to basis that plaintiffs would have to make to properly account for their share of partnership liabilities. Plaintiffs' originally reported basis included their share of the $27.6 million of partnership liabilities reported by the partnership. Those reported liabilities were subsequently reduced by 84% by the Tax Court. As a result, the basis in plaintiffs' partnership interest would have to be reduced so as to include only their share of partnership liabilities, so adjusted.

Doing so would reduce their basis to zero – even if plaintiffs were entitled to increase their basis by the disallowed loss. As originally reported (Def. Ex. 3, App. B at B-22), plaintiffs' basis in their partnership interest at the end of 1986 was zero, computed as follows:

$26,000 capital contributed (§§ 705(a), 722)
+ $41,600 share of partnership liabilities (§§ 705(a), 722, 752(a))
- $69,380 partnership loss (§ 705(a)(2)(A))
-$1,780 (which becomes zero, because partnership losses do not decrease basis below zero. § 705(a).)

Plaintiffs argue that they are entitled to increase their basis by the amount of the disallowed loss ($35,239). Even if that were true, plaintiffs would nonetheless have to decrease their basis by the amount of partnership liabilities that were disallowed by the Tax Court. The 84% reduction in aggregate partnership liabilities translates to a $34,983 reduction in plaintiffs' reported share of those liabilities. The basis of plaintiffs' partnership interest would thus be computed as follows:

$26,000 capital contributed (§§ 705(a), 722)
+ $41,600 share of partnership liabilities (§§ 705(a), 722, 752(a))
- $69,380 partnership loss (§ 705(a)(2)(A))
+ $35,239 disallowed loss
- $34,983 disallowed liabilities
-$1,524 (which becomes zero, because partnership losses do not decrease basis below zero. § 705(a).)

Thus, when the decrease in partnership liabilities is taken into account, plaintiffs are left with a zero basis in their partnership interest, regardless of the increase they claim on account of the disallowed loss.

CONCLUSION

WHEREFORE, defendant respectfully requests that the Court grant its Motion to Dismiss the Complaint.

Respectfully submitted,

s/Karen Servidea
KAREN SERVIDEA
*Attorney of Record*
*U.S. Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-6496
(202) 514-9440 (fax)

RICHARD T. MORRISON
*Acting Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/ Steven I. Frahm
Of Counsel

December 7, 2007
Date

# APPENDIX A

**Internal Revenue Code of 1986 (26 U.S.C.):**

**§ 165. Losses**

**(a) General rule.**--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

**(b) Amount of deduction.**--For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property.

**(c) Limitation on losses of individuals.**--In the case of an individual, the deduction under subsection (a) shall be limited to–

**(1)** losses incurred in a trade or business;

**(2)** losses incurred in any transaction entered into for profit, though not connected with a trade or business; and

**(3)** except as provided in subsection (h), losses of property not connected with a trade or business or a transaction entered into for profit, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft.

. . . .

**§ 705. Determination of basis of partner's interest**

**(a) General rule.**--The adjusted basis of a partner's interest in a partnership shall, except as provided in subsection (b), be the basis of such interest determined under section 722 (relating to contributions to a partnership) or section 742 (relating to transfers of partnership interests)--

**(1)** increased by the sum of his distributive share for the taxable year and prior taxable years of–

**(A)** taxable income of the partnership as determined under section 703(a),

**(B)** income of the partnership exempt from tax under this title, and

**(C)** the excess of the deductions for depletion over the basis of the property subject to depletion;

**(2)** decreased (but not below zero) by distributions by the partnership as provided in section 733 and by the sum of his distributive share for the taxable year and prior taxable years of–

**(A)** losses of the partnership, and

**(B)** expenditures of the partnership not deductible in computing its taxable income and not properly chargeable to capital account; and

**(3)** decreased (but not below zero) by the amount of the partner's deduction for depletion for any partnership oil and gas property to the extent such deduction does not exceed the proportionate share of the adjusted basis of such property allocated to such partner under section 613A(c)(7)(D).

. . . .

**§ 722. Basis of contributing partner's interest**

The basis of an interest in a partnership acquired by a contribution of property, including money, to the partnership shall be the amount of such money and the adjusted basis of such property to the contributing partner at the time of the contribution increased by the amount (if any) of gain recognized under section 721(b) to the contributing partner at such time.

**§ 752. Treatment of certain liabilities**

**(a) Increase in partner's liabilities.**--Any increase in a partner's share of the liabilities of a partnership, or any increase in a partner's individual liabilities by reason of the assumption by such partner of partnership liabilities, shall be considered as a contribution of money by such partner to the partnership.

. . . .

**§ 6221. Tax treatment determined at partnership level**

Except as otherwise provided in this subchapter, the tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level.

**§ 6222. Partner's return must be consistent with partnership return or Secretary notified of inconsistency**

**(a) In general.**--A partner shall, on the partner's return, treat a partnership item in a manner which is consistent with the treatment of such partnership item on the partnership return.

. . . .

**§ 6226. Judicial review of final partnership administrative adjustments**

**(a) Petition by tax matters partner.**--Within 90 days after the day on which a notice of a final partnership administrative adjustment is mailed to the tax matters partner, the tax matters partner may file a petition for a readjustment of the partnership items for such taxable year with–

**(1)** the Tax Court,

**(2)** the district court of the United States for the district in which the partnership's principal place of business is located, or

**(3)** the Court of Federal Claims.

**(b) Petition by partner other than tax matters partner.--**

**(1) In general.**--If the tax matters partner does not file a readjustment petition under subsection (a) with respect to any final partnership administrative adjustment, any notice partner (and any 5-percent group) may, within 60 days after the close of the 90-day period set forth in subsection (a), file a petition for a readjustment of the partnership items for the taxable year involved with any of the courts described in subsection (a).

. . . .

**(c) Partners treated as parties.**--If an action is brought under subsection (a) or (b) with respect to a partnership for any partnership taxable year–

**(1)** each person who was a partner in such partnership at any time during such year shall be treated as a party to such action, and

**(2)** the court having jurisdiction of such action shall allow each such person to participate in the action.

. . . .

**§ 6230. Additional administrative provisions**

. . . .

**(c) Claims arising out of erroneous computations, etc.--**

**(1) In general.**--A partner may file a claim for refund on the grounds that–

**(A)** the Secretary erroneously computed any computational adjustment necessary–

**(i)** to make the partnership items on the partner's return consistent with the treatment of the partnership items on the partnership return, or

**(ii)** to apply to the partner a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a),

**(B)** the Secretary failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a), or

**(C)** the Secretary erroneously imposed any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.

**(2) Time for filing claim.--**

**(A)** Under paragraph (1)(A) or (C).--Any claim under subparagraph (A) or (C) of paragraph (1) shall be filed within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner.

**(B) Under paragraph (1)(B).**--Any claim under paragraph (1)(B) shall be filed within 2 years after whichever of the following days is appropriate:

**(i)** the day on which the settlement is entered into,

**(ii)** the day on which the period during which an action may be brought under section 6226 with respect to the final partnership administrative adjustment expires, or

**(iii)** the day on which the decision of the court becomes final.

**(3) Suit if claim not allowed.**--If any portion of a claim under paragraph (1) is not allowed, the partner may bring suit with respect to such portion within the period specified in subsection (a) of section 6532 (relating to periods of limitations on refund suits).

**(4) No review of substantive issues.**--For purposes of any claim or suit under this subsection, the treatment of partnership items on the partnership return, under the settlement, under the final partnership administrative adjustment, or under the decision of the court (whichever is appropriate) shall be conclusive. In addition, the determination under the final partnership administrative adjustment or under the decision of the court (whichever is appropriate) concerning the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item shall also be conclusive. Notwithstanding the preceding sentence, the partner shall be allowed to assert any partner level defenses that may apply or to challenge the amount of the computational adjustment.

**§ 6231. Definitions and special rules**

**(a) Definitions.**--For purposes of this subchapter–

. . . .

**(3) Partnership item.**--The term “partnership item” means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

**(4) Nonpartnership item.**--The term “nonpartnership item” means an item which is (or is treated as) not a partnership item.

**(5) Affected item.**--The term "affected item" means any item to the extent such item is affected by a partnership item.

. . . .

**§ 7422. Civil actions for refund**

. . . .

**(h) Special rule for actions with respect to partnership items.**--No action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c).

. . . .

**Treasury Regulation (26 C.F.R.):**

**§ 1.705-1 Determination of basis of partner's interest.**

**(a) General rule.**

. . . .

**(2)** The original basis of a partner's interest in a partnership shall be determined under section 722 (relating to contributions to a partnership) or section 742 (relating to transfers of partnership interests). Such basis shall be increased under section 722 by any further contributions to the partnership and by the sum of the partner's distributive share for the taxable year and prior taxable years of:

**(i)** Taxable income of the partnership as determined under section 703(a),

**(ii)** Tax-exempt receipts of the partnership, and

**(iii)** The excess of the deductions for depletion over the basis of the depletable property, unless the property is an oil or gas property the basis of which has been allocated to partners under section 613A(c)(7)(D).

**(3)** The basis shall be decreased (but not below zero) by distributions from the partnership as provided in section 733 and by the sum of the partner's distributive share for the taxable year and prior taxable years of:

**(i)** Partnership losses (including capital losses), and

**(ii)** Partnership expenditures which are not deductible in computing partnership taxable income or loss and which are not capital expenditures.

. . . .

**§ 301.6231(a)(3)-1 Partnership items.**

**(a) In general.** For purposes of subtitle F of the Internal Revenue Code of 1954, the following items which are required to be taken into account for the taxable year of a partnership under subtitle A of the Code are more appropriately determined at the partnership level than at the partner level and, therefore, are partnership items:

**(1)** The partnership aggregate and each partner's share of each of the following:

**(i)** Items of income, gain, loss, deduction, or credit of the partnership;
**(ii)** Expenditures by the partnership not deductible in computing its taxable income (for example, charitable contributions);

**(iii)** Items of the partnership which may be tax preference items under section 57(a) for any partner;

**(iv)** Income of the partnership exempt from tax;

**(v)** Partnership liabilities (including determinations with respect to the amount of the liabilities, whether the liabilities are nonrecourse, and

changes from the preceding taxable year); and

**(vi)** Other amounts determinable at the partnership level with respect to partnership assets, investments, transactions and operations necessary to enable the partnership or the partners to determine–

(A) The investment credit determined under section 46(a);
(B) Recapture under section 47 of the investment credit;

(C) Amounts at risk in any activity to which section 465 applies;

(D) The depletion allowance under section 613A with respect to oil and gas wells; and

(E) The application of section 751 (a) and (b);

**(2)** Guaranteed payments;

**(3)** Optional adjustments to the basis of partnership property pursuant to an election under section 754 (including necessary preliminary determinations, such as the determination of a transferee partner's basis in a partnership interest); and

**(4)** Items relating to the following transactions, to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner:

**(i)** Contributions to the partnership;
**(ii)** Distributions from the partnership; and
**(iii)** Transactions to which section 707(a) applies (including the application of section 707(b)).

**(b) Factors that affect the determination of partnership items.** The term "partnership item" includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc. Examples of these determinations are: The partnership's method of accounting, taxable year, and inventory method; whether an election was made by the partnership; whether partnership property is a capital asset, section 1231 property, or inventory; whether an item is currently deductible or must be capitalized; whether partnership activities have been engaged in with the intent to make a profit for purposes of section 183; and whether the partnership qualifies for the research and development credit under section 30.

**(c) Illustrations--(1) In general.** This paragraph (c) illustrates the provisions of paragraph (a)(4) of this section. The determinations illustrated in this paragraph (c) that the partnership is required to make are not exhaustive; there may be additional determinations that the partnership is required to make which relate to a transaction listed in paragraph (a)(4) of this section. The critical element is that the partnership needs to make a determination with respect to a matter for the purposes stated; failure by the

partnership actually to make a determination (for example, because it does not maintain proper books and records) does not prevent an item from being a partnership item.

**(2) Contributions.** For purposes of its books and records, or for purposes of furnishing information to a partner, the partnership needs to determine:

**(i)** The character of the amount received from a partner (for example, whether it is a contribution, a loan, or a repayment of a loan);

**(ii)** The amount of money contributed by a partner;

**(iii)** The applicability of the investment company rules of section 721(b) with respect to a contribution; and

**(iv)** The basis to the partnership of contributed property (including necessary preliminary determinations, such as the partner's basis in the contributed property).

To the extent that a determination of an item relating to a contribution can be made from these and similar determinations that the partnership is required to make, therefore, that item is a partnership item. To the extent that that determination requires other information, however, that item is not a partnership item. For example, it may be necessary to determine whether contribution of the property causes recapture by the contributing partner of the investment credit under section 47 in certain circumstances in which that determination is irrelevant to the partnership.

**(3) Distributions.** For purposes of its books and records, or for purposes of furnishing information to a partner, the partnership needs to determine:

**(i)** The character of the amount transferred to a partner (for example, whether it is a distribution, a loan, or a repayment of a loan);

**(ii)** The amount of money distributed to a partner;

**(iii)** The adjusted basis to the partnership of distributed property; and

**(iv)** The character of partnership property (for example, whether an item is inventory or a capital asset).

To the extent that a determination of an item relating to a distribution can be made from these and similar determinations that the partnership is required to make, therefore, that item is a partnership item. To the extent that that determination requires other information, however, that item is not a partnership item. Such other information would include those factors used in determining the partner's basis for the partnership interest that are not themselves partnership items, such as the amount that the partner paid to acquire the partnership interest from a transferor partner if that transfer was not covered by an election under section 754.

**(4) Transactions to which section 707 (a) applies.** For purposes of its books and records, the partnership needs to determine:

**(i)** The amount transferred from the partnership to a partner or from a partner to the partnership in any transaction to which section 707(a) applies;

**(ii)** The character of such an amount (for example, whether or not it is a loan; in the case of amounts paid over time for the purchase of an asset, what portion is interest); and

**(iii)** The percentage of the capital interests and profits interests in the partnership owned by each partner.

To the extent that a determination of an item relating to a transaction to which section 707(a) applies can be made from these and similar determinations that the partnership is required to make, therefore, that item is a partnership item. To the extent that that determination requires other information, however, that item is not a partnership item. An example of such other information is the cost to the partner of goods sold to the partnership.

**(d) Effective date.** This section shall apply with respect to partnership taxable years beginning after September 3, 1982. This section shall also apply with respect to any partnership taxable year ending after September 3, 1982, if with respect to that year there is an agreement entered into pursuant to section 407(a)(3) of the Tax Equity and Fiscal Responsibility Act of 1982.