No. 05-743 T
(Judge Francis M. Allegra)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ELWOOD J. LEBLANC, JR. and JANICE L. LEBLANC,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

UNITED STATES' REPLY BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS THE COMPLAINT

NATHAN J. HOCHMAN
Assistant Attorney General

DAVID GUSTAFSON
STEVEN I. FRAHM
KAREN SERVIDEA
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 616-3423
(202) 514-9440 (Fax)

## TABLE OF CONTENTS

**Page**

Introduction . . . . . 1

Argument: . . . . . 2

I. Plaintiffs' Claim Fails Because It Is Not Based on a Legally Valid Method of Computing the Basis of their Partnership Interest . . . . . 2

A. Plaintiffs' New Theory Fails Because Any Increase in the Basis of their Partnership Interest Attributable to Post-1986 Income Would Be Offset by the Decrease in Basis Required by the Reduction in Plaintiffs' Share of Partnership Liabilities after 1986 . . . . . 3

B. The IRS's Former Position with Respect to Similar Claims Is Irrelevant to the Viability of Plaintiffs' Claim . . . . . 5

II. The Court Lacks Jurisdiction over Plaintiffs' Claim, Because It Depends on a Finding that TEFRA Bars this Court from Making: That the Partnership Transactions Were Not Shams and Were Entered into with a Profit Motive . . . . 7

A. The Final Partnership-Level Record for 1986 Does Not Contain a Determination that the Partnership Transactions Were Bona Fide and Entered into for Profit . . . . . 8

B. The Post-1986 Partnership Record Does Not Contain a Determination that the 1986 Partnership Transactions Were Bona Fide and Entered into for Profit . . . . . 12

III. The Materials Cited in Defendant's Motion to Dismiss Do Not Require the Court to Convert It into a Motion for Summary Judgment . . . . . 14

A. The Court Can Consider the Materials Cited by Defendant without Converting Defendant's Motion to Dismiss under Rule 12(b)(1) into a Motion for Summary Judgment, Because the Motion Addresses the Court's Jurisdiction, Not the Merits of Plaintiffs' Claim . . . . . 15

B. The Court Need Not Treat Defendant's Motion under Rule 12(b)(6) as a Motion for Summary Judgment, Because It Depends Only on the Allegations in the Complaint, Indisputable Matters Integral to the Complaint, and Matters of the Public Record . . . . . 17

C. The Discovery Proposed by Plaintiffs Would Not Save their Claim from Failing as a Matter of Law and for Lack of Subject Matter Jurisdiction . 18

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Appendix A:

Internal Revenue Code of 1986 (26 U.S.C.):

§ 752 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1
§ 6110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1
§ 6225 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

**Page**

Appendix B: (Separately Bound):

Exhibit 15: Plaintiffs' Schedule K-1, Partner's Share of Income, Credits, Deductions, etc. for the November 30, 1987, taxable year of Agri-Cal Venture Associates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B-1

Exhibit 16: Plaintiffs' California Schedule K-1, Partner's Share of Income, Credits, Deductions, etc. for the December 31, 1988, taxable year of Agri-Cal Venture Associates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B-4

Exhibit 17: Plaintiffs' Schedule K-1, Partner's Share of Income, Credits, Deductions, etc. for the 1991 taxable year of Agri-Cal Venture Associates . . . . . . . B-6

Exhibit 18: Plaintiffs' Schedule K-1, Partner's Share of Income, Credits, Deductions, etc. for the 1993 taxable year of Agri-Cal Venture Associates . . . . . . . B-9

Exhibit 19: Plaintiffs' Schedule K-1, Partner's Share of Income, Credits, Deductions, etc. for the 1994 taxable year of Agri-Cal Venture Associates . . . . . . B-11

Exhibit 20: Plaintiffs' Schedule K-1, Partner's Share of Income, Credits, Deductions, etc. for the 1995 taxable year of Agri-Cal Venture Associates . . . . . . B-13

Exhibit 21: Plaintiffs' Schedule K-1, Partner's Share of Income, Credits, Deductions, etc. for the 1996 taxable year of Agri-Cal Venture Associates . . . . . . B-15

Exhibit 22: Plaintiffs' Schedule K-1, Partner's Share of Income, Credits, Deductions, etc. for the 1997 taxable year of Agri-Cal Venture Associates . . . . . . B-18

Exhibit 23: Plaintiffs' Schedule K-1, Partner's Share of Income, Credits, Deductions, etc. for the 1998 taxable year of Agri-Cal Venture Associates . . . . . . B-20

Exhibit 24: Plaintiffs' Schedule K-1, Partner's Share of Income, Credits, Deductions, etc. for the 1999 taxable year of Agri-Cal Venture Associates . . . . . . B-23

Exhibit 25: Excerpts from U.S. Partnership Return of Income of Agri-Cal Venture Associates for the 1992 taxable year . . . . . . . . . . . . . . . . . . . . . . . . B-26

## CITATIONS

**Cases:** **Page**

*Atchinson, Topeka & Santa Fe Ry. Co. v. United States*, 61 Fed. Cl. 84 (2004) . . . . . . . . 6

*Buesing v. United States*, 47 Fed. Cl. 621 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Buttke v. United States*, 13 Cl. Ct. 191 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Casazza v. Kiser*, 313 F.3d 414 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Caterpillar Tractor Co. v. United States*, 218 Ct. Cl. 517, 589 F.2d 1040 (1978) . . . . . 6

*D'Avanzo v. United States*, 54 Fed. Cl. 183 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Dickman v. Comm'r of Internal Revenue*, 465 U.S. 330 (1984) . . . . . . . . . . . . . . . . . . . . 6

*Dysart v. United States*, 169 Ct. Cl. 276, 340 F.2d 624 (1965) . . . . . . . . . . . . . . . . . . . . 5

*Estate of Kokernot v. Comm'r of Internal Revenue*, 112 F.3d 1290 (5th Cir. 1997) . . . . 10

*Fickling v. United States*, 507 F.3d 1302 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . 2

*First Nationwide Bank v. United States*, 48 Fed. Cl. 248 (2000), *aff'd*,
431 F.3d 1342 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Gallo v. United States*, 76 Fed. Cl. 593 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381(10th Cir. 1997) . . . 17

*Goldman v. Comm'r of Internal Revenue*, 39 F.3d 402 (2d Cir. 1994) . . . . . . . . . . . . . . 10

*Iosa v. Gentiva Health Servs., Inc.*, 299 F. Supp. 2d 297 (D. Conn. 2004) . . . . . . . . . . . 17

*Kaplan v. United States*, 133 F.3d 469 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Keener v. United States*, 76 Fed. Cl. 455 (2007), *appeal docketed*,
No. 08-5004 (Fed. Cir. Oct. 19, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 11, 16

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 18

*Jackson v. S. Ca. Gas Co.*, 881 F.2d 638 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Last v. United States*, 37 Fed. Cl. 1 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

**Cases (continued):** **Page**

*Levy v. Ohl*, 477 F.3d 988 (8th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Lewis v. Reynolds*, 284 U.S. 281 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Marinovich v. Commissioner of Internal Revenue*, 77 T.C.M. (CCH) 2075 1999 WL 339316 (May 28, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Minehan v. United States*, 75 Fed. Cl. 249 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Nault v. United States*, No. 04-cv-479-PB, 2007 WL. 465310 (D.N.H. Feb. 9, 2007), *appeal docketed*, No. 07-1455 (1st Cir. Mar. 21, 2007) . . . . . 13-14

*Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . 15

*Sara Lee Corp. v. United States*, 29 Fed. Cl. 330 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Slovacek v. United States*, 36 Fed. Cl. 250 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Stone v. Writer's Guild of America West, Inc.*, 101 F.3d 1312 (9th Cir. 1996) . . . . . . . . 17

*Thoen v. United States*, 765 F.2d 1110 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Winstar Corp. v. United States*, 64 F.3d 1531 (Fed. Cir. 1995) (en banc), *aff'd*, 518 U.S. 839 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 165 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14
§ 705 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4
§ 722 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
§ 752 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1, 3
§ 6110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1, 7
§ 6221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
§ 6225 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1, 9
§ 6228 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
§ 6230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
§ 6231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
§ 7422 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, 96 Stat. 324 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Page

**Miscellaneous:**

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Fed. R. Evid. 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Restatement (Second) of Contracts* (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Rule 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-19

**Treas. Reg. (26 C.F.R.):**

§ 301.6224 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9
§ 301.6231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-743 T
(Judge Francis M. Allegra)

ELWOOD J. LEBLANC, JR. and JANICE L. LEBLANC,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

BRIEF FOR THE UNITED STATES IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

## INTRODUCTION

In this suit for a refund of federal income taxes paid for the year 1999, plaintiffs claim a deduction under § 165 of the Internal Revenue Code[1] resulting from their investment in a partnership called Agri-Cal Venture Associates ("ACVA" or the "partnership"). Defendant moved to dismiss the complaint for lack of jurisdiction, and, in the alternative, for failure to state a claim upon which relief can be granted. Plaintiffs filed a brief in opposition to defendant's motion. As discussed below, the arguments in plaintiffs' brief lack merit.

[1]Unless otherwise noted, the section symbol ("§") or the word "section" shall refer to the Internal Revenue Code of 1986, codified in Title 26 of the United States Code, as amended and in effect during the relevant period. Pertinent portions of authorities cited in this brief but not in defendant's opening brief are set forth in Appendix A, *infra*.

ARGUMENT

I. Plaintiffs' Claim Fails Because It Is Not Based on a Legally Valid Method of Computing the Basis of their Partnership Interest

In its opening brief, defendant explained that the settlement agreement plaintiffs entered into with the IRS for the 1986 tax year did not cause an increase to the basis of plaintiffs' partnership interest in ACVA for two reasons. (Mot. to Dismiss (hereinafter "Def.'s Br.") at 21-27.) First, such a result would eviscerate the settlement agreement by allowing plaintiffs to deduct in 1999 (as a loss upon the termination of their partnership interest) the same amount that plaintiffs agreed could not be deducted in 1986 (as their share of partnership loss). *Cf. Fickling v. United States*, 507 F.3d 1302, 1305-06 (11th Cir. 2007). Second, the rules for computing the basis of a partnership interest prevent the settlement-nullifying result plaintiffs advocate, as they reduce the basis of a partnership interest both by a partner's share of partnership loss and by a partner's share of the nondeductible expenditures of a partnership. § 705(a)(2)(A), (B). The only effect that the settlement agreement could have had on the computation of the basis of plaintiffs' partnership interest would have been to convert the disallowed portion of the originally claimed partnership loss into nondeductible expenditures of the partnership. Since both partnership loss and nondeductible expenditures of a partnership reduce basis, however, the outcome of the basis computation would remain the same. Thus, the settlement agreement would have had no net effect on the basis of plaintiffs' partnership interest.

In response, plaintiffs argue that defendant misrepresents plaintiffs' method of computing the basis of their partnership interest. (Pls.' Resp. to Mot. to Dismiss (hereinafter "Pls.' Br." at 16.) They assert that the basis they claim results, not from the disallowed partnership loss, but rather from partnership income reported between 1987 and 1999. (*Id.* at 15.) They further argue

that their claim is supported by positions and actions previously taken by the IRS. (*Id.* at 12-13.) As explained below, plaintiffs' arguments lack merit.

A. Plaintiffs' New Theory Fails Because Any Increase in the Basis of their Partnership Interest Attributable to Post-1986 Income Would Be Offset by the Decrease in Basis Required by the Reduction in Plaintiffs' Share of Partnership Liabilities after 1986

Plaintiffs' current assertion that the basis of their partnership interest results from income reported by the partnership after 1986 is different than the theory set forth in their complaint, which alleges that their basis resulted from the 1986 settlement agreement. *See* Compl. ¶ 10. Even if plaintiffs were to properly amend their complaint to state their new theory, however, their claim would fail because, like their original theory, it invokes one basis adjustment rule to the exclusion of another. Plaintiffs' new theory depends on the rule that the basis of a partnership interest increases by a partner's share of the income of the partnership. *See* § 705(a)(1)(A), (B). But the basis of a partnership interest also decreases as a partner's share of partnership liabilities decreases. §§ 705(a)(2), 752(b). In the years after 1986, plaintiffs recognized a positive share of the income of ACVA, but, at the same time, plaintiffs' share of the partnership's liabilities decreased. Thus, when both basis adjustment rules are applied, the basis of plaintiffs' partnership interest at the time of the alleged termination of ACVA was zero.

A partner's share of partnership liabilities affects the basis of his partnership interest by virtue of its deemed relationship to partnership contributions and distributions: An increase in a partner's share of partnership liabilities is deemed to constitute a contribution by that partner to the partnership, while a decrease in a partner's share of partnership liabilities is deemed to constitute a distribution by the partnership to that partner. § 752(a), (b). In general, a partner's contributions to a partnership increase the basis of his partnership interest, while distributions

from the partnership to a partner decrease the basis of that partner's partnership interest. §§ 722, 705(a). Thus, a partner's basis in his partnership interest increases as his share of partnership liabilities increases, and decreases as his share of partnership liabilities decreases.

Here, decreases in plaintiffs' share of ACVA's liabilities during the years 1987 through 1999 reduced the basis of plaintiffs' partnership interest by an amount that offsets any increases to basis caused by plaintiffs' share of partnership income. The amount of plaintiffs' share of partnership income for the years 1987 through 1999 is shown on the Schedule K-1, "Partner's Share of Income, Credits, Deductions, Etc.," completed by ACVA as part of its informational return each year. Plaintiffs have produced their Schedules K-1 for the years 1987, 1988,[2] 1991, and 1993 through 1999. Def. Exs. 15-24, App. B at B-1 - B-25. They have also produced the partnership's 1992 return, which can be used to determine plaintiffs' share of partnership income for that year. Def. Ex. 24, App. B at B-26 - B-29. Those documents show that, without considering the decrease in partnership liabilities, plaintiffs' basis in their partnership interest would have increased by approximately $31,000 on account of partnership income (and other minor § 705(a) adjustments).[3] The same documents, however, also show that, between 1987 and

---

[2]For 1988, plaintiffs produced a California state Schedule K-1, rather than a federal Schedule K-1.

[3]The $31,000 figure was derived by adding the following amounts:

$3,784 (sum of ordinary income ($3,405) and nontaxable income ($379) from November 31, 1987, Schedule K-1 (Def. Ex. 15, App. B at B-2));
$6,661 (sum of ordinary income ($6,316) and nontaxable income ($345) from December 31, 1988, California Schedule K-1 (Def. Ex. 16, App. B at B-5));
$7,683 (sum of ordinary income ($6,906); interest ($823); net long-term capital gain ($16); and net loss under § 1231 (-$62) from 1991 Schedule K-1 (Def. Ex. 17, App. B at B-7));

(continued...)

1999, plaintiffs' share of ACVA's liabilities decreased by approximately $42,000.[4] Thus, while plaintiffs' share of post-1986 partnership income might have increased the basis of their partnership interest by $31,000, the simultaneous decrease in plaintiffs' share of partnership liabilities would have reduced their basis to zero by the time of the alleged termination of ACVA.

B. The IRS's Former Position with Respect to Similar Claims Is Irrelevant to the Viability of Plaintiffs' Claim

In defense of their original basis-computation theory, plaintiffs argue that they should be allowed to increase the basis of their partnership interest by the amount of the disallowed

---

[3](...continued)

$5,315 (Schedule M-2, Lines 3, 4, & 7 for plaintiffs (partner 131) from ACVA's 1992 Form 1065 (Def. Ex. 25, App. B at B-29));
$3,972 (sum of ordinary income ($4,463); interest ($37); and net loss under § 1231 (-$528) from 1993 Schedule K-1 (Def. Ex. 18, App. B at B-10));
$2,088 (sum of ordinary income ($2,200) and dividends ($4); netted against interest expense on investment debts ($116) from 1994 Schedule K-1 (Def. Ex. 19, App. B at B-12));
$5,771 (sum of ordinary income ($6,213); interest ($6); net long-term capital loss (-$409); netted against interest expense on investment debts ($39) from 1995 Schedule K-1 (Def. Ex. 20, App. B at B-14));
$6,249 (sum of ordinary income ($6,292); interest ($2); dividends ($4); netted against interest expense on investment debts ($49) from 1996 Schedule K-1 (Def. Ex. 21, App. B at B-16));
-$1,004 (sum of ordinary income (-$1,008); interest ($2); royalties ($3); net short-term capital loss (-$5); net long-term capital gain ($4) from 1997 Schedule K-1 (Def. Ex. 22, App. B at B-19));
-$950 (sum of ordinary income (-$959) and interest ($9) from 1998 Schedule K-1 (Def. Ex. 23, App. B at B-21)); and
-$8,380 (Partner's share of lines 3, 4, and 7, from 1999 Schedule K-1 (Def. Ex. 24, App. B at B-24)).

[4]The decrease in plaintiffs' share of partnership liabilities can be seen by comparing plaintiffs' November 30, 1986, Schedule K-1 (Def. Ex. 3, App. B to Def.'s Br. at B-23), which reports plaintiffs' share of partnership liabilities as $41,600, with plaintiffs' 1999 Schedule K-1 (Def. Ex. 24, App. B at B-24), which shows that plaintiffs had no share of partnership liabilities.

partnership loss because certain IRS materials seem to endorse such a theory. (Pls.' Br. at 12-13.) Plaintiffs further assert that the IRS routinely paid claims differing from plaintiffs' only in the respect that the taxpayers claimed capital, rather than ordinary, loss treatment. (Decl. of T. Womack, App. B to Pls.' Br. at 38.) Plaintiffs fail to explain how the written materials or the IRS's prior administrative practice with respect to other taxpayers are relevant to the questions before the Court in this case, however. To the contrary, it is well-established that they are irrelevant.

The issue in a tax refund case is whether the plaintiff can establish an overpayment of taxes in the year before the court. *See Lewis v. Reynolds*, 284 U.S. 281 (1932); *Dysart v. United States*, 169 Ct. Cl. 276, 340 F.2d 624 (1965). A refund suit is a *de novo* proceeding, in which the opinions and conclusions of IRS personnel are irrelevant. *D'Avanzo v. United States*, 54 Fed. Cl. 183, 186 (2002); *Sara Lee Corp. v. United States*, 29 Fed. Cl. 330, 336 (1993). Moreover, it is well-established that the IRS may change an earlier interpretation of the law, even if such a change is made retroactive in effect. *Dickman v. Comm'r of Internal Revenue*, 465 U.S. 330, 343 (1984). Accordingly, the allegation that the IRS has changed its position with respect to claims like plaintiffs' is irrelevant to the instant case.

In interpreting provisions of the Internal Revenue Code, courts have routinely held that IRS instructions and manuals like the "AMCOR Claim Instructions" cited by plaintiffs are not authoritative. *See Caterpillar Tractor Co. v. United States*, 218 Ct. Cl. 517, 589 F.2d 1040, 1043 (1978); *Atchinson, Topeka & Santa Fe Ry. Co. v. United States*, 61 Fed. Cl. 84, 90 (2004). The Regional Counsel Memorandum plaintiffs cite similarly lacks precedential value. There is no indication that it was ever published or distributed as an authoritative pronouncement of the IRS.

The Memorandum appears, rather, to be akin to the types of "written determinations" that the Code expressly declares to be nonprecedential. *See* § 6110(b)(1), (k)(3).

Thus, neither the IRS's prior administrative practice, nor the written materials cited by plaintiffs can save their complaint from dismissal.

## II. The Court Lacks Jurisdiction over Plaintiffs' Claim, Because It Depends on a Finding that TEFRA Bars this Court from Making: That the Partnership Transactions Were Not Shams and Were Entered into with a Profit Objective

In its opening brief, defendant explained that plaintiffs' claim depends on a determination that ACVA's transactions were not shams and were entered into with a profit motive. Because the nature of ACVA's transactions constitutes a partnership item under TEFRA and was at issue in a partnership-level TEFRA proceeding to which plaintiffs were parties, this Court lacks jurisdiction to determine it. (Def.'s Br. at 10-21.) The jurisdictional framework established by TEFRA required plaintiffs to have obtained a determination that ACVA's transactions were bona fide and were entered into for profit before filing the instant partner-level refund suit. *See Keener v. United States*, 76 Fed. Cl. 455, 461, 469-70 (2007), *appeal docketed*, No. 08-5004 (Fed. Cir. Oct. 19, 2007). Because plaintiffs did not do so, this Court lacks jurisdiction over their claim.

In response, plaintiffs concede that transactions that lack economic substance are not recognized for tax purposes. (Pls.' Br. at 14.) They argue, however, that only a portion of the first year's transactions were found to lack economic substance and that the deductibility of the loss they claim therefore should depend only on whether plaintiffs invested in ACVA with a subjective profit motive. (*Id.* at 15.) Plaintiffs' argument fails, however, because the FPAA issued to the partnership for its 1986 tax year determined that *all* of the partnership transactions underlying the reported losses were shams lacking in economic substance. Def. Ex. 5, App. B to

Def.'s Br. at B-34. For this Court to have jurisdiction over their claim, plaintiffs must therefore point to a subsequent partnership-level determination that overturned the FPAA's determination. In an attempt to do so, plaintiffs first argue that the settlement agreement included a determination that the partnership's transactions were not shams. (Pls.' Br. at 11.) But, as explained below, the settlement agreement included no such determination.

Plaintiffs also attempt to satisfy the jurisdictional prerequisite to this suit by construing the post-1986 partnership record to contain a determination that the partnership's transactions were bona fide and entered into for profit. (Pls.' Br. at 15-16.) The attempt fails, however, because plaintiffs' claim depends on the nature of the transactions underlying the losses reported on the partnership's 1986 return, and nothing in the post-1986 partnership-level record overturned the FPAA's determination that those transactions were shams lacking in economic substance.

A. The Final Partnership-Level Record for 1986 Does Not Contain a Determination that the Partnership Transactions Were Bona Fide and Entered into for Profit

Plaintiffs first attempt to satisfy the jurisdictional prerequisite to this suit – a partnership-level determination that ACVA's transactions were not shams and were entered into for profit – by pointing to the 1986 settlement agreement. Plaintiffs contend that the law required the settlement agreement to be "comprehensive" and that the parties treated it as such. (Pls.' Br. at 4-11.) While that contention does not withstand scrutiny,[5] even if it were correct, it would not

---

[5] As of the date that plaintiffs entered their settlement with the IRS, the temporary Treasury Regulation governing TEFRA settlements (Treas. Reg. § 301.6224(c)-3T) expressly permitted both partial and comprehensive settlements. It provided:

> (a) In general. If the Service enters into a settlement agreement with any partner with respect to partnership items, the Service shall offer to any other partner who so requests

(continued...)

satisfy the jurisdictional prerequisite to this suit. Regardless of whether the law required the settlement to be, or the parties treated the settlement as, comprehensive, the settlement actually contained no determination with respect to the nature of ACVA's transactions. Thus, the settlement cannot fulfill the jurisdictional prerequisite to the instant suit. Contrary to plaintiffs' argument, that conclusion does not rely on the "re-opening" of the settlement agreement. It

---

[5](...continued)

> in accordance with paragraph (c) of this section settlement terms which are consistent with those contained in the settlement agreement entered into.
>
> (b) Requirements for consistent settlement terms--(1) In general. Consistent settlement terms are those based on the same determinations with respect to partnership items. . . . Consistent agreements, *whether comprehensive or partial*, must be identical to the original settlement (that is, the settlement upon which the offered settlement terms are based). A consistent agreement must mirror the original settlement and may not be limited to selected items from the original settlement. . . .

Treas. Reg. § 301.6224(c)-3T(b) (as amended Jan. 26, 1999) (emphasis added).

Even if plaintiffs had entered the settlement agreement before the 1999 amendment to the regulation, the requirement in the former regulation that "settlements shall be comprehensive" did not require every TEFRA settlement to be comprehensive. *See* Treas. Reg. § 301.6224(c)-3T(b) (1998). It required, rather, that a consistent settlement agreement include all of the terms in the original settlement. *See Keener*, 76 Fed. Cl. at 465. Thus, plaintiffs have failed to demonstrate that the law required the settlement agreement at issue in this case to settle all of the items disputed in the Tax Court litigation.

Plaintiffs similarly err by interpreting the fact that the IRS assessed additional tax and interest against them for 1986 after they entered into the settlement agreement, but before the Tax Court issued its decision, as evidence that the IRS considered the settlement to be comprehensive. (Pls.' Br. at 10.) Section 6225(a) prohibits the assessment of a deficiency attributable to a partnership item before the 150th day after an FPAA is issued and, if a partnership proceeding to challenge the FPAA is initiated in the Tax Court, before the Tax Court's decision becomes final. § 6225(a). Here, however, plaintiffs specifically waived the restriction on assessment provided by § 6225(a) as part of their settlement agreement. Def. Ex. 8, App. B to Def.'s Br. at B-54. Moreover, the IRS is not always prohibited from assessing a deficiency attributable to a partnership item during the pendency of judicial proceedings. If the partnership had challenged the FPAA in a district court, for example, the IRS could have assessed the deficiency 150 days after the FPAA was issued notwithstanding the judicial challenge. § 6225(a).

follows, rather, from the straightforward application of the settlement agreement. Furthermore, even under plaintiffs' erroneous interpretation of the settlement agreement, it lacks a determination that the transactions on which plaintiffs' present claim is based – *i.e.*, those giving rise to the disallowed partnership losses – were bona fide and entered into for profit.

A settlement agreement is a contract and is therefore interpreted according to general principles of contract construction. *Buesing v. United States*, 47 Fed. Cl. 621, 630 (2000); *Slovacek v. United States*, 36 Fed. Cl. 250, 256 (1996). A primary objective in contract construction is to discern the parties' intent at the time the contract was executed. *Winstar Corp. v. United States*, 64 F.3d 1531, 1540 (Fed. Cir. 1995) (en banc), *aff'd*, 518 U.S. 839 (1996). Where the language of a contract is unambiguous, its meaning must be determined without resort to extrinsic evidence. *Estate of Kokernot v. Comm'r of Internal Revenue*, 112 F.3d 1290, 1294 (5th Cir. 1997); *Goldman v. Comm'r of Internal Revenue*, 39 F.3d 402, 406 (2d Cir. 1994); *Buesing*, 47 Fed. Cl. at 630. Similarly, although a court may supply a term that is missing from a contract if it is essential to the determination of the parties' rights and duties under the contract, if a contract contains no obvious void, then the court must limit its interpretation to the four corners of the contract. *First Nationwide Bank v. United States*, 48 Fed. Cl. 248, 263 (2000), *aff'd*, 431 F.3d 1342 (2005); *Last v. United States*, 37 Fed. Cl. 1, 7 (1996); *see Restatement (Second) of Contracts* § 204 (1981).

The settlement agreement at issue here is unambiguous and, within its four corners, contains no determination that ACVA's transactions were bona fide and entered into for profit. Def. Ex. 7, App. B to Def.'s Br. at B-51 - B-52. Further, such a term is not essential to the determination of the rights or duties of the parties under the settlement, since its omission did not affect the implementation of the parties' agreement that plaintiffs would be allowed to deduct

half of the partnership loss claimed in 1986. Thus, there is no basis for the Court to supply such a term to the agreement. *See First Nationwide Bank*, 48 Fed. Cl. at 263; *Last*, 37 Fed. Cl. at 7.

While plaintiffs do not expressly assert that the agreement is ambiguous or omits an essential term, they attempt to add terms to it by arguing that "split[ting] [an] item from its characterization" would lead to odd results. (Pls.' Br. at 11.) Plaintiffs' argument fails, first, because it assumes that there was only one "item" at issue in the Tax Court litigation – *i.e.*, the amount of partnership losses – and that the nature of ACVA's transactions is merely the "characterization" of that item. Under TEFRA, however, the nature of partnership transactions itself constitutes a partnership item. Treas. Reg. § 301.6231(a)(3)-1(b); *Keener*, 76 Fed. Cl. at 469. Consistent with TEFRA, the FPAA separately stated (1) the IRS's adjustment to the amount of deductions reported by ACVA and (2) the IRS's determination that the partnership's transactions constituted shams. Def. Ex. 5, App. B to Def.'s Br. at B-33, B-34. Likewise, the Tax Court petition filed on behalf of ACVA contained separate counts to dispute (1) the disallowance of the reported deductions and (2) the determination that the partnership's activities constituted sham transactions. Def. Ex. 6, App. B to Def.'s Br. at B-39. Thus, the settlement agreement did not split an item from its characterization; instead, it determined one, rather than two, of the items at issue in the Tax Court proceeding.

Further, plaintiffs fail to demonstrate that the result of a four-corners interpretation of the settlement agreement would in fact be "odd." There is nothing odd or unusual about parties in litigation settling some, but not all, of the items that are at issue in a lawsuit. Plaintiffs here might have decided to settle the amount of partnership loss to ensure that they would be allowed to deduct at least part of the loss they claimed in 1986, while being unwilling to concede the sham-transaction issue, hoping to eventually prevail on that issue and thus avoid the imposition

of tax-motivated interest. Similarly, the IRS might have been willing to allow part of the deductions claimed by ACVA to avoid some litigation costs, while not being willing to concede that the partnership's transactions were not shams. The fact that both the FPAA and the Tax Court petition separately addressed the amount of deductions and the sham-transaction issue indicates that the omission from the settlement agreement of the latter issue was not inadvertent. Regardless of the reasons, the parties did not settle the sham-transaction issue, and it would violate general principles of contract interpretation to read any such term into their agreement.

Apart from plaintiffs' strained and erroneous interpretation of the settlement agreement to include a government agreement that the partnership's transactions were not shams, the Court also lacks jurisdiction over plaintiffs' claim, because the basis they claim is attributable to the *disallowed* partnership loss. Under plaintiffs' interpretation, the settlement agreement implicitly determined that the *allowed* partnership losses were attributable to bona fide transactions. Plaintiffs offer no reason why the settlement should be read to imply a similar determination with respect to the transactions giving rise to the disallowed partnership losses. Thus, since plaintiffs trace the basis of their partnership to the latter category of losses, they still have failed to point to a partnership-level determination that would fulfill the jurisdictional prerequisite to this suit.

### B. The Post-1986 Partnership Record Does Not Contain a Determination that the 1986 Partnership Transactions Were Bona Fide and Entered into for Profit

Since there was no determination in the 1986 partnership-level record that the partnership's transactions were bona fide and entered into for profit, plaintiffs now seek to refer to ACVA's activities after 1986. (Pls.' Br. at 15-16.) Plaintiffs' claimed loss depends on the nature of the *1986* partnership transactions, however, and plaintiffs have failed to show that the

*post-1986* partnership record contains a determination that those transactions were bona fide or entered into for profit.

First, plaintiffs' loss claimed for 1999 depends on the nature of the transactions underlying the losses reported by the partnership in 1986, because plaintiffs seek to derive the basis of their partnership interest from the disallowed portion of those losses. The connection between the 1986 disallowed partnership losses and plaintiffs' claim is made explicit in the complaint, wherein plaintiffs assert that the disallowed portion of the 1986 partnership losses increased the basis of their partnership interest. (Compl. ¶ 10.C, D.) Plaintiffs' continued reliance on the 1986 disallowed partnership losses is evident in their citations to the IRS materials that they construe to endorse their original basis-computation theory. (Pls.' Br. at 12 (quoting IRS notice); *id.* at 16 (quoting Regional Counsel Mem).)

Plaintiffs also now offer a new, alternative theory for their claim, under which the basis of their partnership interest derives from income reported by ACVA after 1986. (Pls.' Br. at 15.) As explained above, however, limiting the computation of the basis of plaintiffs' partnership interest to the post-1986 record still leaves plaintiffs with a zero basis when the partnership allegedly terminated. Thus, to establish a positive basis in their partnership interest, plaintiffs must prove – as they originally theorized – that they are entitled to increase the basis of their partnership interest by the losses that were disallowed in 1986.

By increasing the basis of their partnership interest by the disallowed losses and then claiming that basis as a deduction in 1999, though, plaintiffs seek to deduct losses that were generated by the 1986 partnership transactions. Thus, their claim depends on whether those transactions were bona fide and were entered into for profit. *See Nault v. United States*, No. 04-cv-479-PB, 2007 WL 465310, at *4 (D.N.H. Feb. 9, 2007), *appeal docketed*, No. 07-1455 (1st

Cir. Mar. 21, 2007) (rejecting another AMCOR partner's § 165 claim because of the Tax Court's decision that "the disallowed losses on which [the partner's] current [§ 165] claims are based were attributable to transactions that lacked economic substance"); *see also Marinovich v. Comm'r of Internal Revenue*, 77 T.C.M. (CCH) 2075 (1999), 1999 WL 339316, at *1-*2 (May 28, 1999) (relying on the Tax Court's prior finding that the transactions underlying deductions that a partnership had claimed in the years 1980 through 1983 lacked economic substance as a basis for disallowing a partner's subsequent claim for a § 165 deduction).

Those are the transactions that the FPAA determined constitute shams lacking economic substance, however, and plaintiffs have not pointed to anything in the post-1986 partnership record that overturned that determination. The only allegations plaintiffs make with respect to the post-1986 partnership record are that the partnership reported income and deductions after 1986 and that the IRS did not adjust those items. But unadjusted items of income and deductions reported after 1986 do not constitute a finding that the transactions underlying the partnership losses reported in 1986 were bona fide and entered into for profit.

Thus, plaintiffs have failed to show that either the 1986 or the post-1986 partnership record provides the jurisdictional prerequisite to this suit – *i.e.*, a partnership-level determination that the 1986 partnership transactions were not shams and were entered into for profit.

## III. The Materials Cited in Defendant's Motion to Dismiss Do Not Require the Court to Convert It into a Motion for Summary Judgment

Plaintiffs also argue that, because defendant's opening brief cites materials outside the pleading, the Court should treat the motion to dismiss as a motion for summary judgment. (Pls.' Br. at 2-3.) As explained below, the cited materials do not require the Court to treat either the Rule 12(b)(1) motion or the Rule 12(b)(6) motion as one for summary judgment. Moreover,

even if the Court were to convert the Rule 12(b)(6) motion to dismiss into a motion for summary judgment, plaintiffs have failed to demonstrate that further discovery would enable them to withstand a motion for summary judgment. Relatedly, plaintiffs have failed to demonstrate how further jurisdictional discovery would assist them in establishing that the Court has subject matter jurisdiction over their claim.

A. The Court Can Consider the Materials Cited by Defendant without Converting Defendant's Motion to Dismiss under Rule 12(b)(1) into a Motion for Summary Judgment, Because the Motion Addresses the Court's Jurisdiction, Not the Merits of Plaintiffs' Claim

A court can look to evidence outside the pleadings to determine whether it possesses subject matter jurisdiction over the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). Defendant is contending under Rule 12(b)(1) that TEFRA deprives the Court of jurisdiction to award plaintiffs' the relief they seek. Plaintiffs nevertheless argue that the Court should treat defendant's Rule 12(b)(1) motion as a motion for summary judgment, because it is intertwined with the merits of their claim. Plaintiffs assert that defendant's argument is properly denominated as "a motion for summary judgment on the merits coupled with a motion *in limine* restricting the introduction of evidence." (Pls.' Br. at 2.) To be sure, a court must look beyond the denomination of a motion as "jurisdictional" to determine whether the consideration of materials outside the pleadings will convert the motion into one for summary judgment. *See Thoen v. United States*, 765 F.2d 1110, 1114 (Fed. Cir. 1985). In this case, though, defendant has accurately characterized the nature of its motion as "jurisdictional," and the consideration of the cited materials does not convert it into a motion for summary judgment.

To begin, defendant's contention under Rule 12(b)(1) relies on statutory provisions that are explicitly jurisdictional. *E.g.*, § 7422(h) ("**No action may be brought** for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c).") (emphasis added); § 6230(c)(4) ("For purposes of any claim or suit under this subsection, the treatment of partnership items on the partnership return, under the settlement, under the final partnership administrative adjustment, or under the decision of the court (whichever is appropriate) shall be conclusive."); § 6221("Except as otherwise provided in this subchapter, the tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level."). Consistent with the nature of those provisions, this and other courts have treated similar contentions based on TEFRA as jurisdictional. *See, e.g.*, *Keener*, 76 Fed. Cl. at 459, 470; *Weiner v. United States*, 389 F.3d 152, 157 (5th Cir. 2004); *Kaplan v. United States*, 133 F.3d 469, 473-74 (7th Cir. 1998).

Further, plaintiffs mischaracterize defendant's motion by comparing it to a motion *in limine*. Defendant does not contend that the Court should prohibit plaintiffs from introducing certain evidence. Defendant contends, rather, that a jurisdictional prerequisite to the granting of plaintiffs' claim – a partnership-level determination that the transactions underlying plaintiffs' claim were bona fide and entered into for profit – has not been fulfilled. In that sense, defendant's motion is analogous to a motion to dismiss for failure to file a timely refund claim – a motion that is plainly jurisdictional and treated as properly filed under Rule 12(b)(1). *See, e.g.*, *Minehan v. United States*, 75 Fed. Cl. 249, 253-54 (2007); *Buttke v. United States*, 13 Cl. Ct. 191, 193 (1987).

B. The Court Need Not Treat Defendant's Motion under Rule 12(b)(6) as a Motion for Summary Judgment, Because It Depends Only on the Allegations in the Complaint, Indisputable Matters Integral to the Complaint, and Matters of the Public Record

Although the rule for considering materials external to the pleadings on a motion to dismiss for failure to state a claim upon which relief can be granted is different than that for a motion to dismiss for lack of jurisdiction, it still does not require the Court to treat defendant's motion as one for summary judgment. Defendant's motion in reliance on Rule 12(b)(6) depends primarily on allegations contained in the complaint. The only additional materials that support defendant's Rule 12(b)(6) motion do not require its conversion to a summary judgment motion, because the materials are either integral to the complaint and indisputably authentic, or matters of public record.

Rule 12(b) provides that, if "matters outside the pleading are presented to and not excluded by the court, the [Rule 12(b)(6)] motion shall be treated as one for summary judgment." RCFC 12(b). Nevertheless, for purposes of Rule 12, items of unquestioned authenticity that are referred to in the pleading and are central or integral to the pleader's claim for relief are not considered to be "matters outside the pleading." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 at 186 & n.34 (3d ed. 2004).[6] Similarly, matters of the public record, of which a court can take judicial notice, do not convert a

[6] *See, e.g.*, *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997) (holding that the consideration of a bid letter does not convert a Rule 12(b)(6) motion to dismiss a contract claim into a motion for summary judgment); *Stone v. Writer's Guild of America West, Inc.*, 101 F.3d 1312, 1313-14 (9th Cir. 1996) (holding that the consideration of a collective bargaining agreement does not convert a Rule 12(b)(6) motion to dismiss a claim by a union member against a union into a motion for summary judgment); *Iosa v. Gentiva Health Servs., Inc.*, 299 F. Supp. 2d 29, 37 (D. Conn. 2004) (holding that the consideration of an allegedly defamatory memorandum does not convert a Rule 12(b)(6) motion to dismiss a defamation claim into a motion for summary judgment).

Rule 12(b)(6) motion into a motion for summary judgment. Wright & Miller, *supra*, § 1366 at 185 & n.33; *see* Fed. R. Evid. 201(b).[7]

At bottom, defendant's support for its motion to dismiss for failure to state a claim depends on two facts, both of which are alleged in the complaint: (1) that plaintiffs' basis in their partnership interest resulted from a settlement agreement between plaintiffs and the IRS; and (2) that the settlement agreement reduced plaintiffs' distributive share of 1986 partnership loss. Compl. ¶ 10.C, D. Although not critical to defendant's argument, other materials defendant has cited provide context to plaintiffs' allegations and may be considered as further support for the motion without converting it to one for summary judgment. Materials such as the Tax Court petition, for example, fall within the exception for matters of the public record. Other materials, such as the settlement agreement itself, the notice of computational adjustment, and plaintiffs' Schedules K-1, may be considered, because they are integral to the allegations in the complaint and because, having come from plaintiffs' counsel, they raise no authenticity concerns.[8]

C. The Discovery Proposed by Plaintiffs Would Not Save their Claim from Failing as a Matter of Law or for Lack of Subject Matter Jurisdiction

Even if the Court were to convert defendant's Rule 12(b)(6) motion to dismiss into a motion for summary judgment, the further discovery plaintiffs propose would not enable them to

---

[7]*See, e.g.*, *Levy v. Ohl*, 477 F.3d 988, 991-92 (8th Cir. 2007) (considering court records from prior litigation without converting a Rule 12(b)(6) motion to dismiss a malicious prosecution claim into a motion for summary judgment); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (considering documents on file with the SEC without converting a Rule 12(b)(6) motion to dismiss a securities action into a motion for summary judgment).

[8]In any event, defendant's motion may be granted without resort to these additional, contextual materials. A court is not required to treat a Rule 12(b)(6) motion as a motion for summary judgment if materials beyond the pleadings are not considered. *Casazza v. Kiser*, 313 F.3d 414, 417-418 (8thCir. 2002); *Jackson v. S. Ca. Gas Co.*, 881 F.2d 638, 642 n.4 (9th Cir. 1989); *Gallo v. United States*, 76 Fed. Cl. 593, 598 n.4 (2007).

withstand a motion for summary judgment. Similarly, plaintiffs have not shown that their proposed discovery would assist them in establishing that the Court has subject matter jurisdiction over their claim.

With respect to defendant's Rule 12(b)(6) motion, plaintiffs assert that further discovery would allow them to show that the basis of their partnership interest results from income reported by the partnership after 1986. (Decl. of T. Womack, App. B to Pls.' Br. at 39.) As explained in Section I.A, *supra*, however, any increase in the basis of plaintiffs' partnership interest on account of post-1986 income is negated by the decrease in basis required by the reduction in plaintiffs' share of ACVA's liabilities after 1986. Thus, plaintiffs' claim fails as a matter of law even if the post-1986 record is considered.

With respect to defendant's Rule 12(b)(1) motion, plaintiffs assert that further discovery would enable them to show that ACVA carried on a long-term crop-growing program after 1986. (Decl. of T. Womack, App. B to Pls.' Br. at 39.) As explained in Section II.B, *supra*, however, plaintiffs' claim depends on the nature of the transactions that generated the 1986 partnership losses, and plaintiffs have not asserted that the post-1986 record overturned the FPAA's determination that those transactions were shams lacking economic substance. Moreover, plaintiffs' counsel already has (and produced to defendant) partial copies of several of ACVA's post-1986 returns. Thus, if such returns contain a determination that the 1986 transactions were bona fide and were entered into for profit, plaintiffs could have relied on such returns to respond to defendant's motion.

CONCLUSION

WHEREFORE, defendant respectfully requests that the Court grant its Motion to Dismiss the Complaint.

Respectfully submitted,

s/Karen Servidea
KAREN SERVIDEA
*Attorney of Record*
*U.S. Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-6496
(202) 514-9440 (fax)

NATHAN J. HOCHMAN
*Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/ Steven I. Frahm
Of Counsel

February 15, 2008

# APPENDIX A

**Internal Revenue Code of 1986 (26 U.S.C.):**

**§ 752. Treatment of certain liabilities**

**(a) Increase in partner's liabilities.**--Any increase in a partner's share of the liabilities of a partnership, or any increase in a partner's individual liabilities by reason of the assumption by such partner of partnership liabilities, shall be considered as a contribution of money by such partner to the partnership.

**(b) Decrease in partner's liabilities.**--Any decrease in a partner's share of the liabilities of a partnership, or any decrease in a partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities, shall be considered as a distribution of money to the partner by the partnership.

. . . .

**§ 6110. Public inspection of written determinations**

. . . .

**(b) Definitions.**--For purposes of this section--

**(1) Written determination.**–

**(A) In general.**--The term "written determination" means a ruling, determination letter, technical advice memorandum, or Chief Counsel advice.

**(B) Exceptions.**--Such term shall not include any matter referred to in subparagraph (C) or (D) of section 6103(b)(2).

. . . .

**(k) Special provisions.--**

. . . .

**(3) Precedential status.**--Unless the Secretary otherwise establishes by regulations, a written determination may not be used or cited as precedent. The preceding sentence shall not apply to change the precedential status (if any) of written determinations with regard to taxes imposed by subtitle D of this title.

. . . .

**§ 6225. Assessments made only after partnership level proceedings are completed**

**(a) Restriction on assessment and collection.**--Except as otherwise provided in this subchapter, no assessment of a deficiency attributable to any partnership item may be made (and no levy or proceeding in any court for the collection of any such deficiency may be made, begun, or prosecuted) before–

**(1)** the close of the 150th day after the day on which a notice of a final partnership administrative adjustment was mailed to the tax matters partner, and

**(2)** if a proceeding is begun in the Tax Court under section 6226 during such 150-day period, the decision of the court in such proceeding has become final.

. . . .